## Louis Frech vs. The Philadelphia, Wilmington and Baltimore Railroad Company.

*Accident the result of the Plaintiff's negligence.*

On a suit for injuries produced by the defendant's negligence, the defendant claimed that the injuries were the result of the plaintiff's negligence. HELD:

1st. That the burden is first on the plaintiff to prove the defendant's negligence, and evidence of this being offered, the burden is then on the defendant to prove the contributing negligence of the plaintiff.

2nd. That the plaintiff does not lose his right to recover, except when the injury would not have happened without his negligence, nor even then where, by reasonable care, the defendant might have avoided the result of such negligence.

An injury under the circumstances of this case was held to be the result of the plaintiff's negligence.

When the employés in charge of a railway train, have given all the usual and proper signals to warn persons of their approach, they are not required to stop the train on discovering a person on the track, unless they have reason to believe that he is labouring under some disability, or that he does not hear or comprehend the signals.

APPEAL from the Circuit Court for Cecil County.

The facts are stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ALVEY, J.

*Henry W. Archer* and *Albert Constable,* for the appellant.

*William J. Jones* and *Alexander Evans,* for the appellee.

[The arguments in this case being minute examinations and analyses of the prayers, are omitted, inasmuch as the Court did not enter into this examination, but held that the Circuit Court should have instructed the jury that there was no evidence of negligence on the part of the defendant. Rep.]

ALVEY, J., delivered the opinion of the Court.

This action was brought by the appellant against the appellee to recover for personal injuries received, alleged to have been caused by the culpable negligence of the defendant's agents, while engaged in running a train of cars over its road. The verdict was for the defendant, and the plaintiff has appealed; and the supposed errors of which he complains, and which he seeks by this appeal to have corrected, are involved in the Court's refusal to grant certain prayers offered by him, and in granting the prayers offered by the defendant.

The general question in the case is, by whose negligence was the accident caused that resulted in the injuries to the plaintiff? Was it that of the defendant, under such circumstances as to render it liable therefor, or was it that of the plaintiff himself, under such circumstances as to preclude his right to recover, even if there was negligence on the part of the defendant, co-operating to produce the casualty? The action is resisted upon the ground that the injuries complained of were the consequence of the plaintiff's own negligence, and that, therefore, he is not entitled to recover.

In cases where the evidence implicates the plaintiff as well as the defendant in occasioning the accident, in order to disentitle the former to recover, it should appear that his negligence so contributed to the production of the injury that, without such negligence on his part, the misfortune would not have happened; nor will he be disentitled if the defendant might, by the exercise of reasonable care on his part, have avoided the consequences of the plaintiff's neglect or carelessness. This proposition is maintained by the case of *Tuff vs. Warman*, 2 *C. B., N. S.*, 740; *S. C. 5 C. B., N. S.*, 585, and which has been approved by this Court on several occasions. *North. Cent. R. Co. vs. Price*, 29 *Md.*, 420; *North.*

*Cent. R. Co. vs. Gies,* 31 *Md.,* 357 ; *Lewis vs. Balto. & Ohio R. R. Co.,* 38 *Md.,* 588. But, before any question of contributory negligence by the plaintiff becomes of importance in the case, evidence must be furnished of the culpable negligence of the defendant. And the first inquiry, therefore, is, whether there be any such evidence furnished by the plaintiff as entitled him to have his case submitted to the finding of a jury; for by solving this question we can best determine whether there was error committed by the Court below in its rulings in respect to the prayers offered by the parties.

In cases like the present, there is no presumption of negligence raised against the defendant from the simple fact of the happening of the accident; and the *onus* is upon the plaintiff to show affirmatively that there was such negligence on the part of the defendant as to give the right of action. Where, however, there is evidence of negligence by the defendant, and the right to maintain the action is resisted upon the theory that the plaintiff has, by his own negligence, so far contributed to the production of the injury as to disentitle him to recover, there, the *onus probandi* of such defence is upon the defendant. *North. Cent. R. Co. vs. Geis,* 31 *Md.,* 367 ; *Oldfield vs. N. Y. & Harlem R. R. Co.,* 3 *E. D. Smith,* 103, affirmed in 14 *N. Y.,* 310; *Railroad Co. vs. Gladmon,* 15 *Wall.,* 407. Very generally, however, the proof offered to show the negligence of the defendant, discloses the conduct of all the parties concerned, and enables the Court or the jury to determine which of the parties was or were really in fault. And that is the case, we think, in this instance.

The accident happened on the morning of the 4th of February, 1871, on the branch road of the defendant, leading from Perryville to Port Deposit; and occurred but

a short distance from the depot at the former place, the point at which the branch road intersects the main line. The plaintiff himself proved, that, just before the accident, he had left at the depot the train on the main line, bound for Philadelphia, and walked across the track of the branch road leading to Port Deposit, and got into the highway and pursued it until it crossed the Port Deposit branch road a short distance from the depot, from which the trains for Philadelphia, and those for Port Deposit usually started; that he knew that the Philadelphia train would start in a few minutes—as soon as it had changed passengers and taken in water—but did not know that any train was about to start on the branch road for Port Deposit. He knew that trains ran on the branch road, but did not know at what time they started. That at or from the crossing, no engine or train was visible on the branch road, and he there went upon the track and walked up between the rails in the direction of the place where he was going to work, as it was the best and most direct way; and that, when he had proceeded on the track about thirty-three yards above the crossing where he came upon the track, he was struck by an engine, drawing a train of cars, which came up behind him, on its way to Port Deposit; that he was knocked from the track, and badly injured; and that, until he was struck and injured, he did not know or suspect that any engine or cars were approaching, or that he was in any danger. He further proved, that he heard a whistle soon after he went upon the track of the railroad at the crossing, and turning partly around, looked over his shoulder and saw the Philadelphia train in motion on the main track, and was satisfied that the noise proceeded from that train, the engine of which was starting and blowing its whistle; *and the subsequent continuing whistles, which he heard,* he supposed proceeded from the same engine; and knowing that he was not upon any part of the main track, he felt

no alarm ; and other persons, who saw him upon the track in front of the Port Deposit train, proved that he was passing leisurely along, with his back to the approaching train, apparently unconscious of danger. He further proved, that he did not turn entirely around, nor sufficiently so to see the approaching train on the track upon which he was walking. This is the plaintiff's own statement of the occurrence.

It was further proved that the trains on the main and branch road started from the depot about the same time, and that whistles were sounded from both trains at the time of starting. It was also proved that the crossing, the point where the plaintiff went upon the track of the branch road, was not in sight from the place where the train started ; and that it was not until proceeding around the curve some twenty yards from the depot, and sixty yards from the crossing, that the track at and beyond the crossing to the place where the plaintiff was struck, could be plainly seen.

It was also proved by the engineer and fireman on the train, that all usual and reasonable precautions were taken to avoid the accident. That the engine was proceeding very slowly when the plaintiff was first discovered on the track ; that the plaintiff was well known to one of the witnesses, the fireman, and was known to be a man of good sense, and that he could hear ; and that it was supposed that he would leave the track, as he easily could have done, before the train reached him. That the engine increased its speed as it proceeded, until it reached within about 19 feet of the crossing and 119 feet from the plaintiff, when the alarm whistle was sounded a number of times in quick succession, and the brakes were put down ; and that after the whistle was sounded for down brakes, and after sounding the alarm whistle several times, and the signal for down brakes was repeated, seeing that the plaintiff did not leave the track,

the engine was reversed, but too late to avoid the accident. That the train was moving at the rate of about five miles an hour, and could have been sooner stopped by reversing the engine, but it was thought that the plaintiff would certainly get out of the way, there being sufficient room on either side of the road. It was not until it was found that the plaintiff would not leave the track, that the engine was reversed.

It was proved by other parties that the alarm whistle was heard, and the whistle for down brakes was sounded several times; that the fireman rang the bell from the time the train started to the time of the whistle for down brakes; that the plaintiff was seen walking leisurely along the track, about ten or fifteen feet ahead of the engine, apparently unconscious of any danger; and that the plaintiff himself had declared, a few days after the accident, that he blamed no one for the accident but himself, and that it was his own fault; that he heard the whistle, but thought it was the whistle from the train on the main track; that the fireman of the train rang the bell.

This evidence of the occurrence is without contradiction or conflict; and from it all, or any part of it, it is difficult to perceive in what the negligence of the defendant is supposed to consist.

Now, such being the case, and in view of the principles previously stated, how ought the case to have been disposed of? Clearly, in our opinion, instead of allowing the case to be passed upon by the jury at all, the Court would have been fully justified in giving an instruction, that there was no evidence before them upon which they could find for the plaintiff. All the prayers, both of plaintiff and defendant, in which it was assumed that there was evidence which might entitle the plaintiff to recover, might well have been rejected, and in lieu thereof, the instruction given which we have suggested.

The prayers, on the part of the plaintiff, were all predicated of a state and degree of negligence on the part of the defendant that would entitle the plaintiff to recover. This was not justified by the evidence; and hence there could be no error in refusing to grant such prayers. No prayer should be granted unless there be evidence to support it; for otherwise it would be a mere abstraction, only calculated to mislead the jury.

Here, as we have said, the evidence wholly failed to present a case to entitle the plaintiff to recover; and if a verdict had been found for him, it would have been the duty of the Court below to have granted a new trial. There was not only a failure to show negligence on the part of the defendant, such as would give the plaintiff a right of action, but, assuming the truth of the evidence on the part of the plaintiff, the accident was shown to have been caused by his own want of ordinary care and caution. He was upon the road track unlawfully, and without even the color of excuse or justification; and the agents of the defendant in charge of the train having given all the usual and proper signals to warn persons of their approach, they were not required to stop the train upon discovering the plaintiff on the track unless they had reason to believe that he was laboring under some disability, or that he did not hear or comprehend the signals. *Phil. & R. R. Co. vs. Spearen,* 47 *Penn.,* 304; *St. Louis, Alton & Terre Haute R. Co. vs. Manley,* 58 *Ill.,* 300. Having the right to a clear track, the defendant's agents were justified in acting upon the reasonable supposition that the plaintiff would be guided by his own sense of danger, and would leave the track before he was overtaken by the train, after the signals of danger were given. His failure to do so resulted, manifestly, not from any fault of the defendant or its agents, but from his own inattention to, or mistake of the signals that were given to prevent the accident. The conse-

quences of this inattention or mistake, however unfortunate for the plaintiff, he has no one to blame for but himself, and this, according to the evidence, he candidly admitted.

As we have said, the Court was not only justified in refusing the prayers offered by the plaintiff, but would have been fully justified in giving an instruction that there was no sufficient evidence upon which the plaintiff could recover; and that being the case, the granting of the prayers offered by the defendant did not in the least operate to the prejudice of the plaintiff. By allowing the case to go to the jury at all, the plaintiff was dealt with in a manner more favorable than his evidence showed him to be entitled. His case being inherently defective on the proof, he had no right either to ask instructions that assumed that he might recover, or to complain of instructions that were granted at the instance of the defendant.

The judgment appealed from must be affirmed.

*Judgment affirmed.*

(Decided 3rd March, 1874.)


STEWART, J., filed the following dissenting opinion:

This action was brought to recover for injury, sustained by the plaintiff below, occasioned by the alleged negligence of the defendant's agents.

The nine prayers offered by the plaintiff, were rejected, except the ninth, as to the measure of damages: and the eight prayers of the defendant were granted.

By reference to the well settled principles applicable to the question of negligence, the rulings of the Circuit Court upon the various propositions presented by the respective parties must be determined.

The first prayer of the plaintiff rested his right to recover, upon proof of the negligence of the defendant, (the failure to exercise ordinary care, to prevent the plain-

tiff's injury, was but another form of negligence)—without making his right to recover, depend upon there being no contributory negligence on his part.

The *onus* of the proof of negligence of the defendant, was on the plaintiff; but notwithstanding proof of such negligence, if it was shown that the plaintiff was guilty of contributory negligence, immediately connected with the injury, he was not entitled to recover.

The proposed instruction was therefore partial and incomplete, and was very properly refused by the Court.

The plaintiff's second and third prayers required the Court to decide upon certain conduct therein specified, and its legal bearing upon the relative duties of the parties, under the circumstances indicated.

Whether the want of ordinary care was the result of mistake, inadvertence, or misapprehension, on the one side or the other, that afforded no sufficient justification for its not being exercised.

Each party had the right to expect the exercise of such ordinary care on the other side, as ought to be used under the circumstances. Whether such care was observed by both parties, it was the province of the jury, and not the Court, to determine from a consideration of all the facts and circumstances, in connection with the conduct of the parties. The cases are few and exceptional where the Court will undertake to decide such question.

The fourth prayer of the plaintiff, proposed to relieve him from the consequences of any negligence on his part, by casting the responsibility upon the defendant, if the plaintiff was not aware of the approach of the defendant's locomotive in time to enable him to get out of the way.

His being unconscious of his danger, without any fault of the defendant, was his misfortune, and conferred upon him no right to claim damages from the defendant for his injury, if it was the result of his own mistake, or inadvertence; and certainly ought not to be allowed to

impose any greater burden of responsibility upon the defendant.

In any event, it could only constitute an element in the question as to the character of his negligence, or want of ordinary care, which was a matter, with all the circumstances of the case, for the consideration of the jury.

The instruction contained in the plaintiff's fifth prayer might in some cases be very appropriate; its logical application to the facts of this case, is not perceived; in reference to which, it is a mere abstract and irrelevant proposition which might be misconceived by the jury— as modified by the Court, there can be no reasonable ground of complaint on the part of the plaintiff.

The sixth and eighth prayers of the plaintiff, are liable to similar objections as to his second, third and fourth prayers, because they sought the interference of the Court, to decide questions properly pertaining to the jury.

The seventh prayer of the plaintiff, independent of its being objectionable, in assuming that certain specified conduct of the parties constituted ordinary care on the one side, and the want of such care or negligence on the other, was defective in defining the negligence of the plaintiff, without the qualification, that it did not directly contribute to his injury.

It is undoubtedly true, that although the plaintiff may have been negligent, if his negligence did not directly contribute to his injury; but the defendant, by ordinary care, could have prevented it; such negligence did not prevent his recovery. It is equally true, that the want of ordinary care on the part of the plaintiff would excuse the defendant, although it did not use ordinary care to prevent the injury, if the plaintiff's negligence did directly contribute thereto.

The negligence of the plaintiff in such case, not contributing to the immediate cause of his injury, would not disentitle him to recover. Where the negligence of

the party injured, has not immediately contributed to the accident, it is no defence to the action. The consequences cannot be apportioned, according to the negligence of the one or the other party. *Taylor's Ev., sec.* 281. There was a mutual obligation on the parties to exercise ordinary care, to guard against the effects of each other's neglect. The want of ordinary care on the one side, afforded no excuse for its absence on the other. If the plaintiff, without ordinary care, did get on the road of the defendant, and there continue, and thus render himself liable to accident from the movement of the defendant's locomotive, but such want of care did not directly contribute to his injury.; such conduct did not debar him of his right to recover, if the exercise of ordinary care on the part of the defendant would have avoided it. *B. & O. R. R. vs. State, use of Trainor*, 33 *Md.*, 554 ; *N. C. R. R. vs. State, use of Geis*, 31 *Md.*, 357.

I discover no valid objection to the first, third, fourth and fifth prayers of the defendant,

The second prayer of the defendant is erroneous and might mislead the jury in failing to make the legal discrimination between any remote or immediate negligence of the parties, resulting in the plaintiff's injury.

Both parties may have been remotely negligent, and their joint negligence may have remotely concurred in the production of the injury ; or the one may have been remotely negligent and the other more immediately ; and in this way their joint negligence may have co-operated to accomplish the injury ; and yet that might fail to show whose negligence was the proximate cause of the injury ; and to whose negligence the injury is to be charged, according to the principles before stated in disposing of the plaintiff's seventh prayer.

The defendant's sixth, seventh and eighth prayers were erroneous in undertaking to withdraw from the jury

the determination of the question of negligence by the decision of the Court, that the specific acts referred to in the prayers constituted negligence. The Court could only decide as to the standard of care, submitting the determination of the facts involved in that enquiry, to the jury.

The proposition in the last clause of the seventh prayer, was a sound one. Under the circumstances in proof, there was no obligation on the part of the defendant to have used more than ordinary care and diligence, to have prevented the accident.

There was error according to my judgment, in the granting of the defendant's second, sixth, seventh and eighth prayers.