THE NORTHERN CENTRAL RAILWAY COMPANY *vs.* THE
STATE OF MARYLAND, use of WILLIAM F. BURNS,
and others.

*Action against a Railroad Company under Article 65, of the
Code, for Wrongful killing—Negligence—Locomotive Sig-
nals—Error in submitting case to the Jury where there is no
Evidence of Negligence on the part of the Defendant.*

An action was brought under Art. 65, of the Code, by the State
against a railroad company to recover damages resulting from the
death of the mother of the children for whose use the action was
brought. From the evidence at the trial, it appeared that there
was no one who saw the infliction of the injuries from which the
deceased died, but as far as could be ascertained, there seemed to
be no rational explanation of her injuries, other than contact with
some portion of a passing train of the defendant, and it was not
controverted by the defendant that the injuries were so caused.
The only evidence on the subject of a "look-out" was that of the
engineer and fireman of the train, which was uncontradicted and
unimpeached. They proved that they were both engaged at the
time in keeping a most careful and vigilant look-out, and neither
of them saw the deceased on or near the railway. HELD:

1st. That it could not be inferred from this fact that their testimony
was not true, and might be disregarded by the jury, unless it had
been shown, which was not done, that the deceased was on the
track in front of the train, and was struck by the locomotive.

2nd. That if she came in contact with some other part of the train,
either in attempting to cross, or getting too near the track after
the locomotive had passed, she would not be seen by the engineer
or fireman; and their failure to see her under such circumstances,
would be no ground for imputing negligence to them, as they were
under no obligations to look back.

The proof was that the crossing was not dangerous, and it was not
usual to give signals by ringing the bell or sounding the whistle at
that place. There did not appear to be any reason why such sig-
nals should be given, unless some one should be seen on or ap-

8            v. 54.

114        MARYLAND REPORTS.

Northern Central Railway Co. vs. State, use of Burns.

proaching the track. The train was in sight for the distance of two hundred yards, and the deceased could have seen it, if she had looked, time enough to have crossed in safety, or to have waited till it had passed. HELD:

1st. That it was impossible under the circumstances of the case; to ascribe the accident exclusively to the failure to give signals of the approach of the train.

2nd. That before going upon the track or attempting to cross it, it was the duty of the deceased to look for an approaching train, and her failure to do so was negligence on her part.

3rd. That at the time and place when the accident occurred, there was no obligation on the part of the defendant to give signals of the approach of the train by sounding the whistle or ringing the bell, and negligence could not be imputed to it if they were not given.

4th. That it was error to submit the case to the jury, there being no evidence of negligence on the part of the defendant.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the four following prayers:

1. That if the jury find from the evidence, that on or about the 7th day of June, 1878, Ella Burns was killed by the locomotive or cars of the defendant, while operated by its agents on its road, and that the equitable plaintiffs are related to her as set forth in the pleadings herein, and that said killing resulted directly from a want of ordinary care and prudence on the part of the agents of the defendant, and not from the want of ordinary care and prudence of the deceased, directly contributing to the accident, then the plaintiff is entitled to a verdict.

2. That even if the jury believed that the said Ella Burns was guilty of a want of ordinary care and prudence, in approaching and walking on the track of the

defendant, under the circumstances testified to before them; yet if they further find that if the agents of the defendant, had used in and about the running of the train that injured her, ordinary prudence and care in giving reasonable signals of its approach, and in keeping a reasonable lookout, that the said accident might have been prevented, then the plaintiff is entitled to recover; provided they further find the facts set out in the first prayer of the plaintiff.

3. That in considering the question of negligence, it is competent for the jury, in connection with the other facts and circumstances of the case, to infer the absence of fault on the part of the deceased, from the general and known disposition of men to take care of themselves, and keep out of the way of difficulty and danger.

4. That if under the instructions of the Court, the jury should find for the plaintiff, then, in assessing the damages, they may take into account the reasonable expectation of pecuniary advantage resulting to the equitable plaintiffs, by their mother remaining alive, and damages may be given in respect of that expectation being disappointed, and the probably pecuniary loss, past and prospective, thereby occasioned, and that these prospective damages may be estimated as to the equitable plaintiffs to the period of their majority.

The defendant offered the five following prayers:

1. That if the jury shall find from the evidence that the deceased after crossing the foot-bridge, and before getting upon the track upon which the train was approaching, had looked in the direction from which said train was coming, she could have seen the said train, and that without looking, or with knowledge that said train was approaching near to said point, attempted to cross said track, and was struck while so doing, and that those in charge of said engine were on the lookout when approaching said point, and did not see said deceased, nor know-

of her presence near said track, then the plaintiff cannot recover in this case, though the jury shall find from the evidence that no whistle was blown nor any bell was rung from said engine.

2. That the plaintiff cannot recover in this action without showing that the defendant, or its agents, were guilty of negligence in the management of the train mentioned in the evidence, and that the injury to the deceased was caused by said negligence, and the burden of proof is on the plaintiff to prove such negligence, and that the death of the deceased was caused thereby; and that there is no sufficient evidence in this case from which the jury can find that the said deceased was struck by the engine of said train, or that her death was caused by the negligence of the defendant, or its agents, and therefore the verdict of the jury must be for the defendant.

3. That if the jury find from the evidence, that the deceased, while attempting to cross the railway tracks of the defendant, was killed by the contact with the cars or engine of said train mentioned in the evidence, and that after crossing the foot-bridge, mentioned in the evidence, and before getting upon either of the tracks of said railway, as well as from each of said tracks, and from the space between them, there was a clear view of said tracks in the direction in which said train was coming for two hundred yards or more, and that the deceased, if she had looked, would have seen the said train approaching in time to keep out of its way, and that she, either without looking or with knowledge that said train was approaching said point, attempted to cross said track, and was struck in so doing; and shall further find that neither the fireman nor engineer of said train, were aware of her presence on or near said tracks, and that they were keeping a lookout for persons on or near said tracks, as they approached the said point, and that the tracks and the approach from said foot-bridge, were in full view of the

Northern Central Railway Co. vs. State, use of Burns.

said fireman for two hundred yards, and to the engineer for one hundred, before they reached said point, and said train could have been stopped within the shorter of said distances, then the plaintiff cannot recover in this action, although the jury shall find from the evidence that no whistle was blown, nor any bell was rung on said engine.

4 That if the jury shall find from the evidence, that the deceased was not struck by the engine of the train mentioned in the evidence, but by some one or other of the cars in the rear of said engine, then, under the evidence in this case, there is nothing to show that her being so struck was caused by any negligence of the defendant or its agents, and the plaintiff cannot recover.

5. That if the jury shall find from the evidence, that if the deceased, Ella Burns, after crossing the foot-bridge, and before getting upon either of the railroad tracks, had looked in the direction from which said train was coming, she could have seen the said train in time to keep out of its way, and that without looking, or with knowledge that said train was approaching near to said point, she attempted to cross the said track, on which said train was approaching, in front of the same, and was struck while so doing, then the plaintiff cannot recover in this action, there being no evidence how near the said train was to her when she attempted so to cross, and no evidence that the said train could, by the exercise of reasonable care and diligence, after she so attempted to cross, have been stopped before striking her.

The Court (BROWN, J.) rejected the prayers on both sides, and gave the following instructions of its own:

The Court instructs the jury, that if they find from the evidence, that on or about the 7th day of June, 1878, Ella Burns was killed by a train of defendant, consisting of a locomotive and cars, while operated by its agents, on its road, and that the equitable plaintiffs are related to her as set forth in the declaration in this case, then the

plaintiff is entitled to a verdict, even if the jury believe that the said Ella Burns was guilty of a want of ordinary care and prudence in being in front of said train when it struck her, or in being so near it that it struck her in passing; provided the jury shall also find that if the agents in charge of the train had used ordinary care and prudence in giving reasonable signals of its approach, and in keeping a reasonable lookout, the said accident would not have occurred.

But the Court also instructs the jury, that if they find that Ella Burns directly contributed to the accident by going on the track of the defendant in front of said train, or by going against said train, as it passed so suddenly that the agent in charge thereof could not have avoided the accident by reasonable care and prudence, then the plaintiff is not entitled to recover.

If, under the instructions of the Court, the jury should find for the plaintiff, then in assessing the damages, they may take into account the reasonable expectation of pecuniary advantage resulting to the equitable plaintiffs by their mother remaining alive, and damages may be given in respect of that expectation being disappointed, and the probable pecuniary loss, past and prospective, thereby occasioned, and that these prospective damages may be estimated as to the equitable plaintiffs to the period of their majority.

The defendant excepted, and the verdict and judgment being against it, appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and IRVING, J.

*Bernard Carter*, for the appellant.

*B. Howard Haman* and *Edgar H. Gans*, for the appellee.

Northern Central Railway Co. *vs.* State, use of Burns.

BARTOL, C. J., delivered the opinion of the Court.

This suit was instituted by the appellee, under the 65th Article of the Code (Act of 1852, ch. 299,) for the use of the infant children of Mrs. Ella Burns, to recover damages arising from her death, which happened on the Northern Central Railway, and was caused, as stated in the declaration, by the alleged wrongful act, neglect and default of the appellant's agents, while she was lawfully walking on the railroad track of the appellant. The right of action in such case exists according to the express terms of the Code, only where the party injured (if death had not ensued) would have been entitled to maintain the action. This is the test prescribed by the statute, that is to say "it is incumbent on the plaintiff to prove that the death of Mrs. Burns was caused entirely by the negligence or default of defendant's agents, and it must not appear from the evidence that want of ordinary care and prudence on the part of the deceased, directly contributed to cause her death." *Foy's Case,* 47 *Md.,* 76; *Lewis' Case,* 38 *Md.,* 599.

With this principle in view, we proceed to state briefly the facts of the case, as shown by the testimony, and to consider the ruling of the Court below upon the prayers, and its instructions to the jury set out in the bill of exceptions.

As correctly stated in appellant's brief "there is no direct evidence that the deceased was struck by any of the engines or cars of the company, as there was no one who saw the infliction of the injuries from which she died. She was found lying wounded between the two tracks close to the track over which a train had just passed on its way to Baltimore, and as far as could be ascertained, there seemed to be no rational explanation of her injuries other than contact with some portion of the train of appellant, and therefore the appellant did not controvert in the Court below, or in this Court, that the injuries were so caused."

The accident occurred on the 7th day of June 1878, a little after eight o'clock in the morning, the train by which she was believed to have been struck having left Woodberry station, about a quarter of a mile distant, at seven minutes past eight, Philadelphia time. As shown by the map produced in evidence, and explained by the witnesses, the railway consists of two tracks a few feet apart, running along side of, and parallel to Jones' Falls, on the southwestern side of the stream. A train going toward Baltimore has the stream on the left, and on the right is a public park, with a gate through which pedestrians sometimes pass going into the park, or on their way to and from Baltimore. Across the stream is a footbridge, the end of which is on the land of the company about ten yards from the railway and about twenty-five yards northeast from the park gate in a diagonal direction. Many persons going to Baltimore and back, cross the railway between the bridge and park gate, but there is no public road or way there, nor any planks for convenience of crossing. As stated by plaintiff's witnesses, persons going from the bridge to the park gate after crossing the bridge, sometimes continue on the side next the stream till opposite the gate and cross directly over the railway, sometimes they cross the railway immediately after leaving the bridge and walk to the gate, there being a foot path on each side of the railway; and sometimes they cross diagonally from the bridge to the gate. There is no testimony showing at what point, or in what manner deceased got upon the railway.

The witness *Wartman* saw her on the road leading from Woodberry towards the bridge on the east side of the falls—she was walking quite fast and seemed to be in a hurry; a few minutes after her, the witness *Wilhelm* passed along in the same direction; when he had crossed the bridge, he heard some one groaning and saw Mrs. Burns lying between the tracks of the railway waving

her hand. The spot where she lay, as stated by the witnesses was about twenty yards from the bridge in a diagonal direction, and three or four yards from the park gate. She was lying near the south or west track with her head towards it. As stated by *Dr. Williams* one of plaintiff's witnesses " her shawl had fallen to her waist and her dress was not torn at all, and seemed very little deranged, it was just as it were wrapped about her person, it looked as if she might have been pushed aside; she was dying, and expired in a short time. Wilhelm states that before crossing the bridge, and when about one hundred and fifty yards from it, he saw a train of cars going towards Baltimore on the west or south track; it was then a short distance beyond the place where he afterwards saw deceased lying. It is probable she was struck by that train. The place where the accident happened is in the open country. South of Woodberry there is a curve in the road, and there were three trees on the west side of the falls, near the foot bridge; but these did not obstruct the view; according to all the testimony there was a clear unobstructed view of the railway for the distance of two hundred yards; for that distance an approaching train could be seen from the end of the bridge, or from any point between it and the railway, or on the railway.

On the east side of the Falls nearly opposite the park gate is a large cotton mill which was then in operation, the noise of which and of the water, according to the testimony of some of the witnesses, drowned the noise of an approaching train, and prevented a person from hearing it.

On leaving Woodberry the bell on the train was rung, but no bell was rung or whistle sounded as it approached the place of the accident. The evidence is that it was not customary to give any such signals at that place, unless some one was seen on, or approaching the railway. The only evidence in the case as to a look-out upon the train, is that of the engineer and fireman, who testified that

from the time they left Woodberry, they were in the cab, the engineer on the west and the fireman on the east side, each having his head out of the window carefully looking out. This vigilance continued till they reached a *culvert* below the park gate, about fifty yards beyond the foot bridge, where they shut off the steam on approaching Mt. Vernon. They explain that they always run slowly and carefully, and keep a sharp lookout on this part of the road, it being their duty to do so, for the reason that at Mt. Vernon there are switches connecting with the freight yards, where the freight trains of the company are made up, and they are liable to have flagmen on the tracks signalling them that the freight trains are in the way near the Mt. Vernon freight yards. Neither the engineer nor the fireman saw the deceased, nor did they know any thing of the accident till they heard of it, after the train had reached Baltimore.

There was no blood on the locomotive, nor any marks of the collision. The wounds on the person of the deceased, as testified by Dr. Williams, were a cut on the left side of the head, beginning on the left and extending towards the right side, a cut over her right eye, and her left shoulder seemed to be broken as her left arm seemed to be useless. Her knees were skinned and her hands scratched. There was some blood on the ballast, and on the cross-tie where she was lying between the tracks, but nene between the rails on the west track on which the train was running, nor any on the rails themselves.

Mrs. Burns was thirty-six years of age, in good health and in full possession of her faculties.

The train consisted of a locomotive and eight cars; besides the conductor, engineer and fireman, there were upon it, a baggage-master and two brakemen, and it was furnished with Westerhouse air-brakes, and was running eleven miles an hour.

These are the facts of the case as shown by the testimony.

The defence rests on two propositions: 1st. That there is no evidence legally sufficient to be submitted to the jury, to prove negligence on the part of defendant's agents causing the death of Mrs. Burns, and 2nd. That her death was the direct consequence of a want of ordinary care on her part.

Five prayers were offered by the defendant asking for instructions on these points; these were rejected, and instructions were given to the jury submitting to them the questions of negligence on the part of defendant's agents, and of contributory negligence on the part of the deceased.

This ruling is presented for review on this appeal.

We have not met with any reported case, in which the evidence relied on to charge a railroad company for the consequences of an accident to a stranger, is so meagre and insufficient as in the present; either for the purpose of proving negligence on the part of the company, or of exonerating the unfortunate subject of the accident from gross and inexcusable carelessness directly causing her death.

As said in *Frech's Case*, 39 *Md.*, 576, "Before any question of contributory negligence by the deceased, becomes of importance in the case, evidence must be furnished of the culpable negligence of the defendant. And the first inquiry therefore, is whether there be any such evidence furnished by the plaintiff as entitled him to have the case submitted to the jury."

On this question the preliminary statement of the facts of the case leaves very little room for argument or comment. A recurrence to them suffices in our judgment to absolve the defendant from the charge of negligence, and demonstrates the total absence of proof to support such a charge. The only particulars in which negligence is sought to be imputed to the company, and which, are referred to in the Court's instruction are 1st. A failure to keep a reasonable "*look out*" on the train, and 2nd. A failure to give

reasonable signals of its approach by ringing the bell or sounding the whistle.

As to the first, there is no testimony in the case of any failure or omission in this respect. The only evidence on the subject is that of the engineer and fireman, which is uncontradicted and unimpeached. They proved that they were both engaged at the time in keeping a most careful and vigilant look out. They, neither of them saw Mrs. Burns on or near the railway, and from this fact it is sought to be inferred that their testimony is not true, and might be disregarded by the jury. This suggestion might be entitled to some weight, if it had been proved that the unfortunate lady was on the track in front of the train and had been struck by the locomotive; for if that had been shown, they could not have failed to see her, if they had been looking out as they state. But in this particular the plaintiff's evidence fails. From all that appears, she may have come in contact with some other part of the train, either in attempting to cross or getting too near the track after the locomotive had passed. In which case she would not be seen by the engineer or fireman, but their failure to see her under such circumstances would be no ground for imputing negligence to them. They were under no obligation to look back. One of the hypotheses stated in the Court's instruction is that Mrs. Burns was struck not by the locomotive, but by some other part of the train. If that were so, it is clear the defendant would not be responsible for her death. 2nd. As to the failure to give signals, by ringing the bell or sounding the whistle. The proof is that it was not usual to give any such signals at that place; Mrs. Burns had therefore no reason to expect them; nor does there appear to be any reason why such signals should be given, unless some one should be seen, on, or approaching the track. It is impossible for the plaintiff under the circumstances of this case, to ascribe the accident exclusively to the failure to give

signals of the approach of the train. It was in sight for the distance of two hundred yards; there was no obstruction to her view, she could have seen it if she had looked, time enough to have crossed in safety, or to have waited till it had passed. Before going upon the track or attempting to cross it, it was her duty to look for an approaching train, and her failure to do so was negligence on her part. As said by CHAUNELL, B., in *Stubley vs. The London & N. W. Railway Co. Law Rep.*, 1 *Exch.*, 13, (cited in *Foy's Case*, 47 *Md.*, 86.) "Passengers crossing the rails are bound to exercise ordinary and reasonable care for their own safety, and to look this way and that to see if danger is to be apprehended." We refer also to other cases cited in *Foy's Case*, and to the *Railroad Co. vs. Houston*, 95 *U. S.*, (5 *Otto*,) 702. In this case it was said "the failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employés in these particulars was no excuse for the negligence on her part. She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses she could not have failed both to hear and see the train that was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If using them, she saw the train coming, and yet undertook to cross the track instead of waiting for the train to pass, and was injured, the consequence of her mistake and temerity cannot be cast upon the defendant. No railroad company can be held for a failure of experiments of that kind." * * * * * * *

In that case the accident occurred in a village, where it was the conceded duty of the persons in charge of the

train, to give signals of its approach by sounding the whistle or ringing the bell; and yet their omission in this respect, it was held, did not render the defendant responsible in a case where the deceased by the omission of ordinary and reasonable precautions contributed to cause the accident.

In this case, at the time and place where the accident occurred, there was no obligation on the part of the company to give the signals spoken of, and negligence cannot be imputed to the defendant if they were not given. In *Skelton's Case, L. R.,* 2 *C. B.,* 631, (cited in *Foy's Case,* 47 *Md.*) it was properly said, "There are many cases in which a railway company is bound to take additional precautions, on account of special dangers. * * * * For example, where a sharp corner or any other cause prevents persons from being able to avoid the danger of approaching trains by due care. *Bilbec vs. L. & B. Railway,* 18 *C. B.,* (*N. S.*) 584, (114 *E. C. L.*) So where the night is dark, or smoke from neighboring works prevents persons crossing the line from seeing any engine coming, they should be warned by lights or whistling." *James vs. G. W. Railway, cited in note L. R.,* 2 *C. P.,* 634; 36 *C. P.,* 255.

As was said in *Skelton's Case,* so we say in this, there was nothing to oblige the "defendant to take extra precaution." The crossing was not dangerous; in day light with the approaching train in full view, there was no need of signals; and nothing but the merest speculation and conjecture could induce the jury to believe that the accident was caused entirely by the want of signals of the approach of the train, or that it would have been avoided if they had been given.

It follows from what we have said, that it was error to submit the case to the jury, there being no evidence of negligence on the part of the defendant. And as there was no ground for a recovery by the plaintiff, the *second prayer* of the defendant ought to have been granted.

It is not necessary to advert to the particular objections urged by the appellant to the Court's instruction; it being in our opinion, error to submit the case to the jury at all upon the undisputed facts disclosed by the proof. Nor do we consider it necessary to notice the other prayers of the defendant, which place the defence upon the evidence of contributory negligence on the part of the deceased.

In our judgment the plaintiff has failed to offer any evidence whatever of negligence on the part of defendant's agents in charge of the train, whereby the accident was caused. The judgment must therefore be reversed, and no new trial will be ordered.

*Judgment reversed.*

(Decided 29th June, 1880.)