# STEARMAN

*v.*

# BALTIMORE & OHIO RAILROAD COMPANY.

PRACTICE; WITNESS, REFRESHING MEMORY OF; DIRECTING VER-
DICT; RAILROADS; NEGLIGENCE.

1. It is not error for a trial court to refuse to allow an affidavit made
   by a witness before trial to be read to him in the presence
   of the jury for the purpose of refreshing his recollection as to
   the date of an occurrence concerning which he was testifying.

2. A trial court may properly direct a verdict where the evidence, with
   all just inferences that might be drawn from it, would be insuf-
   ficient to support a contrary verdict; *following* Warthen *v.*
   Hammond, 5 App. 167.

3. Where in a suit against a railroad company for death by its alleged
   negligence, plaintiff's testimony showed that decedent, a woman,
   was killed while walking on the track of defendant near the
   city limits, while coming into the city, by a train running up be-
   hind her and going at a speed of 15 or 16 miles an hour; that
   the track in question, which was a straight one, was usually
   used for outgoing trains, and that no bell or whistle was heard,
   it was *held* that the trial court properly directed a verdict for the
   defendant; *following* Railroad Co. *v.* Didzoneit, 1 App. D. C.
   482.

4. In such a case, before negligence can be inferred from a failure to
   sound a warning by bell or whistle, it should be made to appear
   that the engineer saw deceased in time to do so; *following*
   Weaver *v.* Railroad Co., 3 App. D. C. 436.

No. 390.   Submitted March 19, 1895.   Decided April 1, 1895.

HEARING on an appeal by the plaintiff from a judgment
on a verdict directed by the court.   *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an action for damages for the negligent killing of
Dora Stearman, on January 27, 1888, brought by her ad-
ministrator, Louis Stearman, under the authority of the
statute.   (23 Stat. 307.)

Deceased was a married woman, and lived near the track of the Baltimore and Ohio Railroad Company, in the District of Columbia, and near the limits of the city of Washington. She started into the city on the morning of a bright clear day. The railway company has two tracks at the place where deceased was killed, running parallel with each other, the usual distance apart. George W. Woodward, a witness for plaintiff, said that he saw a woman who, he afterwards learned, was Dora Stearman, walking towards the city on the eastern track. He was on the carriage road, some three hundred yards away, when he first saw her. He saw the cars coming behind the woman, and wondered why they were on that track, because, during six years, he had never seen cars come in on that track, though often going out thereon. There was an engine and three passenger cars. When he first saw them, the cars were a considerable distance behind the woman, who was then about two hundred yards from witness. He saw her first, and then looked back and saw the cars coming behind her. The track was straight at that place. He watched her for some time and missed her as the cars stopped. He hurried down and saw deceased picked up from the bank near the track. He picked up two baskets belonging to the deceased. The train was moving at the rate of fifteen or sixteen miles an hour. On cross-examination, he said that he heard neither bell nor whistle sounded; that he was on the east side of the track and about two hundred yards away, walking in the direction of the track and a little behind the deceased; that he "just happened to turn around and looked and saw the train getting closer and closer to the woman;" that he picked up the basket about two hundred yards from the "watch box."

The train engineer was called by plaintiff and testified merely that he was running his train into the city about 7.40 a. m., and stopped near the Boundary after striking a woman, who, as he afterwards learned, was named Dora Stearman. She was struck in the back. The fireman was

also called by the plaintiff, and said that the engine was on the eastern track, and struck the woman about 7.30 a. m. Cross-examined, he said, that he did not see her when she was struck ; that when he first saw her she was about forty or fifty yards from him on the other, or western track.   She was not on the same track with the engine.   He could not say that this person was deceased.   When he looked there was no one on the track in front of the engine, and he did not see the person cross over.

This was all the testimony relating to the accident, and upon its conclusion the court instructed the jury to return a verdict for the defendant :

*Mr. Joseph Shillington* and *Mr. Edwin Forrest* for the appellant.

1. The fact that deceased was walking upon the track is not conclusive of her negligence by any means, and it was the duty of the engineer to exercise at least ordinary care to avoid injuring deceased even if she were a trespasser.   The witness Woodward testified that the train was a considerable distance from deceased when he first saw it, and the engineer, had he been looking as his duty required, could easily have seen her.   The law will presume that the engineer discharged his duty and did see her.   It is not necessary to show by affirmative testimony that the engineer's look was directed toward the woman.   It is enough if it appear from all the facts and circumstances in the case that he might have seen her by the exercise of reasonable diligence and ordinary prudence.   The fact that deceased could have been seen in time to avoid running over· her is evidence sufficient to sustain a verdict of negligence.   *Railroad Co.* v. *Patterson,* 36 Pac. 913 ; *Felch* v. *Railroad Co.,* 29 Atl. 557.·   It was for the jury to weigh this evidence and consider its bearing in the light of all the other facts and circumstances.   If they believed that the engineer did· in fact see her, and could ·have warned her in time to ·escape.

they would have been justified in finding against the defend-
ant, even though plaintiff's intestate was herself at fault.
Deering's Law of Negligence, sec. 31 ; *Harlan* v. *Railway
Co.*, 65 Mo. 22 ; *Railroad Co.* v. *Boderner*, 139 Ill. 596 ;
*Craft* v. *Railroad Co.*, 62 Fed. Rep. 735.

2. The fact that the train which killed deceased was coming
in on a track employed by outgoing trains (contrary to the
usage of the road), devolved upon the engineer a greater
degree of care in running his engine than if it were upon
the customary track, and it was his duty to be particularly
watchful for obstructions, and for persons who in and near
large cities use the roadbed as a foot-path. *Railway Co.* v.
*Watkins*, 26 S. W. Rep. 760; *Railroad Co.* v. *Wymore*, 58 N.
W. 1120 ; *Railway Co.* v. *Ives*, 144 U. S. 417 ; *Croft* v. *Rail-
road Co.*, 62 Fed. Rep. 739 ; *Mitchell* v. *Railway Co.*, 37
Pac. Rep. 341.

3. The facts as proven, in the light of the foregoing author-
ities, are sufficient to charge negligence on the part of the
defendant, and the court erred in not submitting the case to
the jury. Conceding that it is not negligence *per se* to walk
on a railroad track, the evidence in this case, that deceased
could have been seen by the engineer in time to have
avoided the accident, or at least to have sounded an alarm ;
that no signal was given, and that the train was on the
wrong track, would have fully warranted the jury in finding
a verdict in favor of the plaintiff. *B. & O. Railroad Co.* v.
*Trainor*, 33 Md. 542 ; *Railroad Co.* v. *Dougherty*, 36 Md.
366.

*Messrs. Hamilton & Colbert* for the appellee :

1. A railway company has the exclusive right to occupy,
use and enjoy its railway tracks, trestle works and bridges.
Such exclusive right is absolutely necessary to enable it
properly to perform its duties, and any person walking upon
a track or bridge without the company's consent is a tres-
passer, and in case of injury to such person from the com-

pany's cars he is without remedy, unless it is shown by affirmative evidence that the injuries resulted from negligence so gross as to amount to wantonness. *Mason* v. *Railroad Co.*, 6 A. & E. R. R. Cases, 1 ; *Carter* v. *Railroad Co.*, 15 Id. 414 ; *Railroad Co.* v. *Smith*, 15 Id 469 ; *Railroad Co* v. *Brinson*, 19 Id. 42 ; *Wright* v. *Railroad Co.*, 28 Id. 652 ; *Railroad Co.* v. *Yniestra*, 29 Id. 297.

2. Persons in charge of a railroad train are not bound to keep a lookout for trespassers on the track. They are not bound to anticipate such intrusion and are not liable for the injury occurring without their knowledge in consequence, and those in charge of a train seeing an adult upon the track are entitled to presume that he will leave the track before he is run over. *Railroad Co.* v. *Graham*, 12 A. & E. R. R. Cases, 77 ; *Palmer* v. *Railroad Co.*, 31 Id. 364 ; *Railroad Co.* v. *Monday*, Id. 424.

3. It is generally held that a railroad track is private property at all places except street crossings and public highways, and that all persons, except the agents and servants of the company in the discharge of their duty, who go upon the tracks are trespassers, and particularly is this so where they use the track as a foot-path or thoroughfare on which to walk and travel. *Railroad Co.* v. *Hetherington*, 83 Ill. 510 ; *Sweeney* v. *Railroad Co.*, 128 Mass. 5 ; *Railroad Co.* v. *Hummell*, 44 Pa. St. 375 ; *Guenther* v. *Railroad Co.*, 34 A. & E. R. R. Cases, 47, and note, where numerous authorities are referred to, which hold that a person so intruding upon the track cannot recover on proof of ordinary negligence merely, but must show that he himself used extraordinary care and was wantonly or wilfully injured by the company or its employees. In the same note, page 57, authorities from almost every State are cited, holding that under ordinary circumstances there is no obligation resting upon the company to stop or check up their trains in approaching persons trespassing upon their tracks, because the law presumes that a person walking upon the railroad track will leave the same in time to prevent injury from an approaching train of which

he has knowledge or should have by the ordinary use of the senses of hearing and seeing, and that the managers of the train may act upon this presumption.  See also *State*, *use of Bacon*, v. *Railroad Co.*, 58 Md. 490; *Candelaria* v. *Railroad Co.*, 48 A. & E. R. R. Cases, 565; *Railroad Co.* v. *Boderner*, 139 Ill. 596.

4. The testimony offered by the plaintiff in this cause not only fails to show negligence on the part of the defendant, but conclusively shows contributory negligence on the part of the plaintiff, and this case is brought clearly under the decision of the Supreme Court of the United States in *Elliott* v. *Railroad Co.*, 150 U. S. 245, which holds that when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict returned in opposition to it, it may withdraw the case from the consideration of the jury and direct a verdict.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first assignment of error is founded on a ruling made by the court in the course of the examination of plaintiff's witness, Woodward, and is set forth in the bill of exceptions as follows: " On redirect examination, the witness stated, that while he did not recollect the date of the accident, he remembered making an affidavit in relation to the accident, but did not know how long ago it had been. He identified his signature to the affidavit, which was shown him, and thereupon counsel for plaintiff tendered said affidavit to the witness for the purpose of refreshing his recollection, to which no objection was interposed by the counsel for defendant.  Witness stated that he could not read the affidavit, and further stated that he did not know that said affidavit was read over to him; that he did not recollect of its having been read over, but he recollected signing at the bottom, and that he wrote his signature to it and swore to the truth of it.  Thereupon counsel for plaintiff offered to read said affidavit to the witness in the hearing of the jury,

and ask him whether that refreshed his recollection." The affidavit was also copied into the record, and bears date March 11, 1891, more than three years after the accident. No request was made to have the paper read to the witness elsewhere than in the presence of the jury, and the court refused the permission as asked. Had the witness been able to read the paper, which it seems he was able to sign his name to, it would have been proper to permit him to refresh his memory by its perusal, and no objection was made thereto. But it was not proper to permit the paper to be read to the witness in the hearing of the jury. He should have asked leave to have it read to him elsewhere. As a matter of fact, moreover, the affidavit is in substantial accord with the evidence given by the witness, which follows it very closely. There was no need to refresh his recollection as to the exact day upon which the accident occurred, even if this could have been effectually done by a paper drawn up and subscribed more than three years thereafter, because the witness had said it occurred in January, 1888, and the exact date was unimportant.

2. The next and last question is, did the court err in directing a verdict for the defendant? The limitations of the power of the trial courts, in this District, to take a case from the jury and direct a verdict, are carefully considered and explained in the opinion of this court delivered by Mr. Justice Morris, in *Warthen* v. *Hammond*, 5 App. D. C. 167, to which nothing need be added. Although in that case the trial court was held to have exceeded its power in directing a verdict to be returned, it was said: " We regard it as a sound and salutary rule of practice, that a trial court may withdraw a case from the consideration of a jury, or, what amounts to the same thing, in our practice, may peremptorily direct a verdict for one or the other party to a suit in clear cases where the evidence, with all just inferences that might be drawn from it, would be insufficient to support a contrary verdict; and a trial court should not hesitate to exercise its right so to do."

With this rule in mind, the evidence is to be carefully considered. It appears therefrom that the deceased had voluntarily placed herself in a situation of great danger. The fact that trains had not usually been run upon the eastern track into the city, in which direction she was walking, or had not been seen by the witness to run in that direction, makes but little if any difference. It does not appear that there was any law or regulation governing the running of trains upon that track, and the fact that the train which did the injury was running into the city thereon, would tend to show at least that there was no rule or invariable custom controlling its use. The place of the accident was outside the limits of the city, and the speed of trains at that place was discretionary with the defendant. There was no road crossing at or near the place, and it does not appear that people had been accustomed to use the tracks as a pathway to or from the city. Deceased was not shown ever to have used the track for a walk before, and there is nothing to show any reason for her doing so on that occasion. The evidence shows that there was a wagon road not more than two hundred yards from the track, in which the witness, Woodward, was walking on his way to the city at the time that he saw deceased walking on the track.

There is no evidence tending to show that the engineer saw deceased at all, much less in time to warn her, or to stop the train before running upon her. If it be granted that the testimony of a witness who says that he did not hear the sound of either bell or whistle, is equivalent to proof that no such sound was made, the fact would tend rather to show that the deceased was not seen at all in time to give the warning, than that she was wilfully or recklessly run down after her presence had been discovered. Before negligence could be inferred from a failure to sound the warning, it should be made to appear that the engineer saw the deceased in time to do so. As we have seen, however, there was no evidence showing, or tending to show, that he did see her. There is therefore no foundation for inference.

Presumption cannot be founded on presumption; it must have for its base a fact or circumstance in actual proof. Nor can negligence be inferred from the mere fact of injury. *Weaver* v. *B. & O. R. Co.,* 3 App. D. C. 436.

It is earnestly contended that it was the engineer's duty to keep a sharp lookout ahead, and that, had he done so, he must inevitably have seen deceased in time to give the usual warning, or to stop the engine; and hence, that he was guilty of negligence. Concede this, and yet something more is required to warrant a recovery in a case like this, where the plaintiff's own evidence discloses the fact that the negligence of his intestate contributed directly to the accident. In holding that there was no case for submission to the jury, the trial court followed the rule laid down by this court in the case of *R. & D. Railway Co.* v. *Didzoneit,* 1 App. D. C. 482. The facts of that case were even more favorable to the plaintiff than are the facts of this. The engineer, before starting his engine to pass the station, saw the boy sitting upon the low platform, with his foot upon or near the rail, but did not know that he was asleep. The engine was moving at the rate of about three miles per hour, and the engineer, supposing the boy to be awake and in the possession of his senses, took it for granted that he would move his foot in time to avoid injury. But, on coming nearer, he discovered that the boy was apparently asleep, whereupon he tried to stop the engine, but was unable to do so in time to prevent the accident. The bell was not rung, nor was the whistle sounded. Judgment for the plaintiff was reversed, because the court ought to have instructed the jury to find for the defendant on account of plaintiff's contributory negligence. The rule governing such cases was thus stated: "It will be noticed that it is reckless injury and willful negligence that will not excuse a defendant when they occur after a case of contributory negligence in the plaintiff. Negligence superimposed upon negligence does not amount to wilfulness; nor is the failure, superinduced by negligence, to have knowledge of a dangerous

condition the equivalent of actual knowledge of such condition.  And it is only when a defendant has actual knowledge of the plaintiff's danger, and could, by the exercise of ordinary care and prudence have avoided the resulting injury, that the plaintiff is relieved from the liability of having his own negligence charged against him, and the defendant's negligence is regarded as the proximate and exclusive cause of the injury.  The fact that it may have been negligence in the defendant not to have known the plaintiff's danger, and that the defendant might have ascertained the danger by the exercise of due care, cannot be permitted to have the effect of actual knowledge so as to charge the defendant with recklessness.  To allow such an effect would result in the overthrow of the whole doctrine of contributory negligence.  It would be impossible, upon such a theory, ever to hold any one to the consequences of his own misconduct.  For if negligence to acquire knowledge were the equivalent of knowledge, in the contemplation of the law of torts, every act of negligence should be construed as an act of wilfulness."  See also *State, use of Bacon*, v. *B. & P. Railway Co.*, 58 Md. 482, 490; *Frech* v. *P., W. & B. Railroad Co.*, 39 Md. 574; *Railroad Co.* v. *Houston*, 95 U. S. 697.

Finding no error in the proceedings on the trial, *the judgment must be affirmed, with costs to the appellee ; and it is so ordered.*