## Pack v. Northeast Coal Company.

(Decided November 2, 1911.)

### Appeal from Johnson Circuit Court.

1. Damages—Action for—Absence of Evidence as to What Caused Injury—Peremptory Instruction.—In an action for damages for injury sustained in a coal mine, where it was impossible to determine from the evidence of plaintiff what caused the car to leave the track at the time of the injury, the court was warranted in holding that the plaintiff had failed to make out his case.

2. Same—When Case Should be Taken From Jury.—No rule is better settled by the decisions of this court than that, under such circumstances, it is the duty of the trial judge to take the case from the jury.

C. B. WHEELER for appellant.

HAGER & STEWART, VAUGHN, HOWES & GOWES for appellee.

Opinion of the Court by Judge Lassing—Affirming.

While working in the mine of the Northeast Coal Co., in Johnson County, Kentucky, F. M. Pack was seriously injured. Conceiving his injury was due to the negligence of the owners of the mine, he instituted a suit to recover damages therefor. The company denied liability, and pleaded that the injury was either the result of an assumed risk or due to the contributory negligence of the plaintiff. The affirmative matter in the answer was traversed, and upon the issues thus made the case went to trial. The evidence for plaintiff was heard, and, at the conclusion thereof, the court peremptorily instructed the jury to find for the defendant, which was done. The plaintiff appeals.

Plaintiff alleged that he was employed by the defendant company to work in the rooms of its mine in getting out coal and loading it into cars; that when these were loaded they were pushed along the track leading from the room to the main track in the main entry, where they were by the company hauled out of the mine; that the track in the room in which he was working was negligently and carelessly constructed; that one of the rails therein had a kink or crook in it; that in attempting to run the car over that rail the front wheel was caused to leave the track, thus derailing the car; and that the plaintiff, who was at the time pushing the car from behind, had

his head caught between the bed of the car and the roof of the mine, thus inflicting a permanent injury.

Plaintiff was fifty-seven years of age, and had been engaged in the business of mining coal for about twenty-five years. At the time of his injury he was working in two rooms near the head of a cross-entry, driven at right angles to the main entry. The day before his injury he had shot down a lot of coal, and this he could not conveniently load until some additional track had been put in the room for him. It was the company's business to lay this track; and it was the duty of the miners to mine the coal, take the cars from the main entry into the mine, load them, and push them from the room back to the main entry. The plaintiff prepared the place for the additional track needed by shoveling the coal to one side, following which two additional rails were laid in this room. He had pushed one car from the main entry into the room and loaded it and taken it out, and was taking a second car in to load it when the accident resulting in his injury occurred. He testified that in taking this car from the main entry into the room he pushed it along with his hands until it became hard to move, and then he put his shoulder against the rear end of the car, and in this way attempted to push it along. The vein of coal that was then being worked was about four feet thick, so that the space between the top of the bed of the car and the roof was narrow—from eight to twelve inches. When plaintiff put his shoulder to the back of the car to push it along, his head extended over the car, and he was in this position when something happened causing the front of the car to drop down, thus elevating the rear end and catching plaintiff's head between the bed of the car at the back end and the roof.

There is no question but what he was seriously injured. Plaintiff had pushed the car by hand along some hundred and fifty or two hundred feet in this room before he attempted to push it with his shoulder. It is quite apparent from his testimony that he did not know just how the injury occurred, i. e., what caused it. In answer to the question, on direct examination, "What were you doing at the time you got hurt?" he said: "I was pushing the car over the rail where I had taken it from the driver, pushing it into the room and pushing it over the rail to get it to the coal and it run off the track, the far end, the right end dropped down. It was up

grade, I had been pushing with my hands, and it got so hard to push it that way I had to take my shoulder, and the top being too low to stand straight, it threw my head above the hind gate of the car; my head was between the car and the roof. Just before it run off I noticed the rail to see how close the end I had gotten. I didn't think I was anyways close to the end of the rail, and I kept pushing. I could not see to the end of the rail and did not think I was anyways near the end of the rail when it run off, but eventually it run off and caught my head in that shape." On cross-examination, he said, "I stated that I looked around before the car run off to see whether I was at the end or not—I always try to notice—I knew the end was there, but I did not know how close I was to it." Q. "You knew, necessarily, as you were pushing it there, you would reach the end of the track?" A. "Yes, I knew the end was there, but I didn't know how close I was. In fact, I didn't know whether the rail was laid up against the end of the coal, face of the coal or not, and don't know that yet." Q. "At any rate, your intention was to stop the car before you reached the end of the rail?" A. "Yes, sir." Q. "And you thought you would do that before you reached the end of the rail?" A. "If it had occurred to me that I was going to reach the end of the rail I would have stopped, of course."

The witness testified that he had not examined to see whether the track which he had requested to be laid that morning had been laid entirely up to the face of the coal. He had only his miner's lamp. The room was dark and smoky, and he testified that, just before putting his shoulder to the wheel, he looked around the left side of the car and thought that he saw the track some distance in front. The undisputed evidence is, that of the two rails composing the track laid that morning, one was about three feet longer than the other. Plaintiff's son, who was introduced in his behalf, testifies that he visited the scene of the accident the morning following; that one of these rails, the one on the right-hand side, was about three feet shorter than the one on the left-hand side; that there was a crook or kink in the shorter rail about three feet from the end; and that he saw blood on the track four or five feet back of this kink. Plaintiff testifies that these cars which were used by him in hauling out the coal were eight or nine feet long; so that the testimony of his son demonstrates practically to a mathematical certainly that when the accident occurred the front end

of the car was thrown from one to two feet beyond the end of the short rail. This is necessarily so, for the blood on the track shows the point at which plaintiff's head was caught between the roof and the car. He testifies that he remained in that position for some time, and until he was relieved; and that his head and face were cut and bled copiously.

Clearly, from the testimony of plaintiff, he was injured in one of two ways: Either the car, because of some defect in the rail, left the track before it reached the end of the short rail; or else it was pushed beyond the end of the short rail by plaintiff. The negligence of which he complains in his petition is that the company furnished him a crooked rail in the track, it being his theory that the crook in this rail caused the car to leave the track. He testifies that the right end of the car dropped down after it ran off of the track. If there had been a derailment, both front wheels would necessarily have left the track at the same time. One could not have left it and the other remained on it. But if the car had been pushed beyond the end of the short rail, the front wheel on that side would have dropped down and the other front wheel might have remained upon the track. Since plaintiff did not know how far he had pushed the car, or how near the track was laid to the face of the coal, it is impossible from his testimony to tell what caused the injury. He evidently did not know whether he pushed the car beyond the end of the track or not. It cannot be told from his testimony how the accident occurred. When considered in connection with that of his son, it is apparent that it was due to his running the car over the end of the track, i. e., beyond the end of the short rail. Clearly, if the accident occurred in this way, he is not entitled to recover, for the negligence complained of is that one of the rails in the track laid for him was crooked. There is no complaint that one of the rails was shorter than the other.

If the rail in the track laid was crooked, as alleged, and this defect in the track was the approximate cause of plaintiff's injury, the company would be liable therefor; but if the injury resulted from plaintiff's carelessly pushing the car beyond the end of the track, the company would not be liable. It is impossible to state from plaintiff's evidence, and that of his son, what caused the car to leave the track. With the evidence in this condition the trial court was warranted in holding that plaintiff had failed to make out his case. No rule is better settled

by the decisions of this court than that, under such circumstances, it is the duty of the trial judge to take the case from the jury.

This rule is aptly stated in Hughes v. Cincinnati, &c., Railroad Co., 91 Ky., 526. It is there held that in an action to recover for an injury arising from defendant's negligence, the burden of showing the negligence is on the plaintiff; and if the evidence shows that the injury may have resulted from either one or more causes, only one of which was due to defendant's negligence, and the inference that the injury resulted from the one cause is no stronger than that it resulted from the other, the plaintiff has failed to make out his case, and the jury should be so told.

In Louisville Gas Co. v. Kaufman, Straus & Co., 105 Ky., 131, it was held that "when the question is one of negligence or no negligence, it is well-settled law that, where the evidence is equally consistent with either view—the existence or non-existence of the negligence—the court should not submit the case to the jury, for the party affirming the negligence has failed to prove it. Thomp. Neg., p. 364." And the case of Hughes v. Cincinnati, &c., R. R. Co., supra, was cited with approval.

In the case of Illinois Central R. R. Co. v. Bom, 25 Rep., 709, this same principle was tersely stated by this court, speaking through Judge Hobson, as follows:

"Where the plaintiff's evidence leaves the mind in doubt as to whether his injury was due to the defendant's act, or to some other cause, there can be no recovery."

To the same effect are Cotton v. Wood, 8 C. B. (N. S.), 568; Baulec v. Railroad Co., 59 N. Y., 357; Hayes v. Railroad Co., 97 N. Y., 259; Grant v. Railroad Co., 133 N. Y., 658; Cadwell v. Arnheim, 152 N. Y., 182; Williams v. Southern R. Co., 130 N. C., 116; Frech v. Philadelphia, &c., R. Co., 39 Md., 574; Northern Central R. Co. v. State, 54 Md., 113; and Sorenson v. Menosha, &c., Co., 56 Wis., 338.

Under the facts developed by plaintiff's evidence the ruling of the trial judge was correct.

Judgment affirmed.