(Decided 11th July, 1882.)

STATE OF MARYLAND, use of NANCY BACON, and others *vs.* THE BALTIMORE AND POTOMAC RAILROAD COMPANY.

*Action to recover Damages for Personal injury—Evidence to be adduced by Plaintiff—Contributory negligence—Burden of Proof—When case should be Withdrawn from the consideration of the Jury—Negligence—Instruction to the Jury—Practice in the Court of Appeals.*

In actions to recover damages for personal injuries suffered by the alleged negligence of the defendant, it is incumbent upon the plaintiff to prove, 1st, that there was a neglect of duty by the defendant; and 2ndly, that the injury sustained was the direct consequence of such neglect of duty. And in many cases a third

State, use of Bacon *vs.* Balt. & Potomac R. R.

question arises, and that is whether the party killed or injured was so far to blame as to have directly contributed, by his own negligence or want of caution, to produce the injury complained of. This being matter of defence, the *onus* of proof in respect to it is properly on the defendant.

But where material defensive facts are disclosed by the testimony adduced on the part of the plaintiff, and the evidence thus adduced by the plaintiff *clearly* establishes the fact of contributory negligence on the part of the person killed or injured, there is nothing to be left to the jury to find.

While it is perfectly true, that where the plaintiff produces evidence, which, if uncontradicted, would justify and sustain a verdict, no amount of contradictory evidence, however strong, will justify the Court in withdrawing the case from the jury; yet, if it be proved, as part of the plaintiff's case, or if it be otherwise proved and not controverted or denied by the plaintiff, that the party injured or killed was clearly guilty of negligence in the occurrence of the accident, and that such accident would not have occurred but for the negligence of the party injured directly contributing thereto, in such case the defendant is entitled to have the jury instructed that their verdict must be for the defendant.

Negligence of the defendant is no excuse for negligence on the part of the person injured.

In an action to recover damages for a death caused by the alleged negligence of the defendant, the Court instructed the jury, "that the plaintiff was not entitled to recover because the deceased directly contributed to cause his death." On appeal, it was HELD :

That while the form of the instruction would have been more appropriate, if it had directed the jury that upon the case made by the plaintiff, or upon the undisputed facts in the case there was no ground of action shown, and therefore their verdict must be for the defendant; yet where this Court can plainly see that there is no ground for the action, or no possible right of recovery, it will not reverse the judgment upon the mere form of the instruction that has led to a right result.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

State, use of Bacon *vs.* Balt. & Potomac R. R.

The cause was argued before Bartol, C. J., Grason, Alvey, Irving, and Ritchie, J.

*Charles J. Bonaparte,* for the appellant.

*Bernard Carter,* for the appellee.

Alvey, J., delivered the opinion of the Court.

This suit was brought to recover damages for the death of George Bacon, a colored man, who was struck and killed by an engine on the road of the defendant, about 10 o'clock at night of the 6th of September, 1879; the accident being alleged to have occurred by the negligence of the employés of the defendant.

At the trial in the Court below, after all the testimony was in, both for plaintiff and defendant, prayers for instruction were offered by the plaintiff, but which were rejected; and the Court, at the instance of the defendant, instructed the jury, "that the plaintiff was not entitled to recover, because the deceased directly contributed to cause his death;" and a verdict was rendered for the defendant accordingly.    And the first and principal question is, whether this instruction was rightly given.

In actions like the present, to recover damages for personal injuries suffered by the alleged negligence of the defendant, it is incumbent upon the plaintiff to prove, 1st, that there was a neglect of duty by the defendant; and, 2ndly, that the injury sustained was the direct consequence of such neglect of duty.    And in many cases, as in the present, a third question arises, and that is, whether the party killed or injured was so far to blame, as to have directly contributed, by his own negligence or want of caution, to produce the injury complained of.    This being matter of defence, the *onus* of proof in respect to it is properly on the defendant.    But it is not unfrequently the case, that material defensive facts are disclosed by the

testimony adduced on the part of the plaintiff, and where such is the case, and the evidence thus adduced by the plaintiff *clearly* establishes the fact of contributory negligence on the part of the party killed or injured, there is really nothing to be left to the jury to find.   For while it is perfectly true, that where the plaintiff adduces evidence which, if uncontradicted, would justify and sustain a verdict, no amount of contradictory evidence, however strong, will justify the Court in withdrawing the case from the jury; yet, if it be proved, as part of the plaintiff's case, or if it be otherwise proved and not controverted or denied by the plaintiff, that the party injured or killed was clearly guilty of negligence in the occurrence of the accident, and that such accident would not have occurred but for the negligence of the party injured directly contributing thereto, in such case, the defendant is entitled to have the jury instructed that their verdict must be for the defendant.   The facts are taken as established, and the question then becomes one of law for the Court, to be passed upon and decided as upon a demurrer to evidence. There is no office to be performed by the jury unless there is a contest in regard to the material facts involved in the issue or question to be decided, and if the facts, sufficient in themselves to establish clearly the contributory negligence on the part of the party injured, be either admitted or shown in proof by the plaintiff while attempting to prove negligence on the part of the defendant, the Court is well justified in acting upon such proof as true, and in directing the jury accordingly.   As illustrative of this, we may take the example given of the application of the rule by Lord Chancellor CAIRNS, in the case of the *Dublin, Wicklow & Wexford R. Co. vs. Slattery*, 3 *Appeal Cas., Ho. Lords*, 1166, to the effect that if a train, which ought to give signal by whistle when approaching a road crossing, or passing a station, were to pass without giving such signal, and a party were, in broad daylight, and without anything,

either in the structure of the line or otherwise, to obstruct his view, to cross in front of the advancing train and to be killed, the Judge ought to instruct the jury that it was the folly and recklessness of the party himself, and not the carelessness of the company, which caused his death. In such case, says the Chancellor, "the jury should not be allowed to connect the carelessness in not whistling, with the accident to the man who rushed, with his eyes open, on his own destruction."

In this case the facts are few, and from their nature it requires no long process of deduction to enable us to arrive at a definite and certain conclusion from them. The proof on the part of the plaintiff shows clearly that Bacon, the deceased, had lived for several years immediately on the roadside, and was well acquainted with the running of the trains. That he, with his companion Williams, on the evening of the accident, sometime between 6 and 7 o'clock, left his house and went down the railroad to a store, immediately on the road side, a distance of something over a mile and a half from his house. He remained at this store until about 10 o'clock, when he, with his companion, started to return to his house, walking up the track of the railroad. The train which caused the death of Bacon was a regular express train from Baltimore to Washington; and the schedule time for leaving Baltimore was 9 o'clock at night, or 9.05 by Philadelphia time, though it was a little late that night in leaving Baltimore; and, according to the testimony on the part of the plaintiff, it was a few minutes late when it reached Seabrook station, near which the accident occured; though, according to the testimony on the part of the defendant, the time had been fully made up before the train reached that station. While at the store neither Bacon nor Williams kept any lookout for the passage of the train, though they knew that such train was to pass, and of the time it was due at Seabrook station. Just before leaving the store for

home, Bacon took out his watch, and informed himself of the time, according to his time-piece, and observed to Williams, his companion, that "there is a train comes along —a very swift running train—a through train, and does not stop; and he didn't like to be on the road at that time of night, as it was very dark." The witness further says, that the deceased "looked at his watch to see if the train had passed; he said it was time the train *ought* to have passed, and at that time it ought to have been in Washington." Bacon, at the same time, remarked that the train was due at Seabrook station at 10 o'clock, and that it was then four or five minutes after 10 o'clock; he thought it ought to have passed. And thereupon the parties started to walk up the railroad track to Bacon's house, instead of taking what was known as the "Telegraph road," running in the same direction, though, by that road, the distance was a little greater. The parties had proceeded up the track of the railroad a distance of nearly a mile, to a point near the crossing of a county road, a little south of the Seabrook station, when and where the accident occurred. The night was dark, but the express train was approaching from the direction of Baltimore, bound to Washington, thus meeting the parties walking on the track, and the engine carried the ordinary headlight. From a point a considerable distance south of the place where the accident occurred, the railroad is entirely straight in the direction of Baltimore for a distance of more than three miles; and there is no such grade in the track as would obstruct the view or prevent parties meeting the approaching train from seeing it at a considerable distance before reaching the point where the accident occurred. At the time of the accident Bacon was walking some strides ahead of his companion Williams, and the latter saw the approaching train in time to leave the track before the train came up to him. He says, however, that he did not observe the train until just before he stepped aside to get out of the way. Both

he and the widow of the deceased testified that they heard no whistle sounded at the road crossing near Seabrook station; but it is not pretended that the parties were attempting to cross the road, or that they were at the crossing at the time of the accident. The only act of neglect proved against the defendant by the evidence adduced on the part of the plaintiff was the failure to sound the whistle at the crossing of the county road; and that proof was strongly controverted by the proof adduced on the part of the defendant. But, as the case is now presented on the instruction of the Court below, we are not to consider the conflicting or opposing evidence produced by the defendant. The facts we have stated are those established by the plaintiff's witnesses, and such as are not in any manner controverted by the plaintiff.

Now, as stated by the witnesses, the night was dark, and the parties assumed the risk of walking up the railroad track for a distance of over a mile and a half, knowing that it was about the time for the passage of an express train, and without knowing whether or not such train had in fact passed. It is true, they may have supposed that because a few minutes had elapsed after the precise time when the train was due, according to the time kept by themselves, that it had in fact passed. But that was a mere surmise, founded upon no other fact than the few minutes time that was supposed to have elapsed from the time when the train was regularly due. They had heard no train pass that they took to be the express train, though they had been for about three hours at the store immediately on the road side; and it is the common knowledge of every one at all acquainted with the running of railroad trains, that it is no unusual thing for them to be a few minutes behind schedule time in passing way-stations. It was an act of peril, and therefore an act of negligence, under the circumstances of the case, to undertake to walk such a distance on the railroad track. And

if there was difficulty in escaping from the track, by reason of embankments, cuts or ditches, along the road, the peril and the negligence, in venturing the walk, were only the greater. The night being dark, they must have known that they could not depend for their safety upon being seen by those in charge of the train, beyond the reflection of the headlight. They knew perfectly well that their safety depended alone upon the use of their senses and the exercise of a proper degree of caution. It is difficult to suppose that they did not see the approaching train, with its glaring headlight confronting them, in time to enable them to step from the track. If the deceased did see or hear the approaching train in time, and failed to get out of the way, he was certainly guilty of the grossest negligence; and if he did not see or hear the approaching train, it must have been because he did not use his senses for his protection, and he was therefore guilty of negligence, and that negligence directly contributed to the cause of his death. And upon either of these suppositions, (and there can be no other upon the proof offered by the plaintiff,) it was quite immaterial that the whistle was not sounded as the train approached the crossing; for conceding that omission to have been negligence on the part of the defendant in respect to the deceased, yet, if the latter saw or heard the approaching train in time to get from the track, the sounding of the whistle would have added nothing to the admonition to escape; and if he did not see or hear the approach of the train, his own negligence in placing himself in such a perilous situation, and the manifest want of care and attention in the use of his senses to guard himself against the perils that he had voluntarily incurred, so directly contributed to and brought about the occurrence of the accident, that all right of action for and in respect of the alleged negligence of the defendant is completely precluded.

State, use of Bacon *vs.* Balt. & Potomac R. R.

Repeating here substantially what has been said and held in previous cases, the deceased was at the time of the accident on the private right of way of the defendant, where he had no right to be. But, aside from this fact, the failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking proper precautions for his own safety. Negligence of the defendant's employés in these particulars, was no excuse for negligence on his part. He was bound to listen and to look while walking along the railroad track, in order to avoid an approaching train, and not to walk carelessly into a place of possible danger. Had he used his senses, he could not have failed both to hear and to see the train which was approaching; and having failed to observe the proper precautions, there is no right of action against the defendant for the consequences of the accident. *N. C. R. Co. vs. Burns,* 54 *Md.,* 113; *B. & P. R. Co. vs. Stansbury, Id.,* 648; *Railroad Co. vs. Houston,* 95 *U. S.,* 702.

There was some objection made to the form of the instruction given; but while the form of the instruction would have been more appropriate, if it had directed the jury that upon the case made by the plaintiff, or upon the undisputed facts in the case, there was no ground of action shown, and therefore their verdict must be for the defendant; yet when this Court can plainly see that there is no ground for the action, or no possible right of recovery, it will not reverse the judgment upon the mere form of the instruction that has led to a right result. The judgment must be affirmed.

*Judgment affirmed.*

(Decided 11th July, 1882.)