THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.*
THE STATE OF MARYLAND, use of ELIZABETH A.
SCHROEDER, use of PRUDENCE S. SCHROEDER, infant,
by her next friend, RICHARD F. SCHROEDER, JR.

*Railroad company—Death of Person walking on Track—*
*Contributory negligence—Gross negligence.*

In an action against a railroad company to recover damages for
the death of a person, it appeared that the deceased was walk-
ing in open daylight on the track of the defendant, within the
limits of the City of Baltimore, and where the railroad company
had the exclusive right of way for the operation of its trains.  A
train was approaching at quite a fast rate of speed, the deceased
facing it, and when within a short distance of the train the de-
ceased stepped upon and crossed the north track of the defendant's
road diagonally, to the south side thereof, and pursued his way
on the ends of the cross-ties until he was struck and killed by the
engine.   From the time the train got within about a thousand
feet of the place where the accident occurred, it was in full view
to any one at or about the point of collision ; and other persons
heard and saw its approach and paid heed to it.   HELD :

That although the train was running at a much higher rate of
speed than that allowed by the ordinance of the City, the death
of the deceased was due to his own gross negligence, and the
Court should have directed the jury to render a verdict for the
defendant.

Where a party is discovered on a railroad track, in the exercise of
full power of locomotion, and with no impediment to his escape,
those in charge of the train may well act upon the assumption
that he will use his senses for his protection, and get out of the
way of danger before he is struck.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*First and Second Exceptions*, taken to the ruling of the Court below upon the admissibility of evidence, were not considered by this Court, and are therefore omitted.

*Third Exception.*—The plaintiff offered the following prayers that the Court (STEWART, J.,) granted:

1. That if the jury find from the evidence that on or about the 10th day of October, 1887, Richard Ford Schroeder was killed by the locomotive and cars of the defendant while operated by its agents on its road, and that the equitable plaintiffs are related to him in the manner set forth in the declaration herein, and that the said killing resulted directly from the want of ordinary care and prudence on the part of the agents of the defendant having charge of the train, and without any want of ordinary care and prudence on the part of the said Schroeder, then their verdict must be for the plaintiff.

2. Even if the jury believe that the said Schroeder was guilty of the want of ordinary care and prudence in walking on the track of the defendant under the circumstances testified to before them, yet if they further find that after the agents of the defendant, having charge of said train, saw or by the exercise of proper care and caution in keeping a look-out might have seen said Schroeder upon said track, they could, by the exercise of ordinary care and caution in the management and running of said train, have avoided the killing of said Schroeder, then the plaintiff is entitled to a verdict; provided they find the other facts set out in the plaintiff's first prayer.

5. That if the jury shall find for the plaintiff, then in assessing the damages they are to estimate the reasonable probabilities of the life of the deceased, Richard F. Schroeder, and give his widow and his minor daughter, the equitable plaintiffs, such pecuniary

damages not only for past losses, but for such prospective damages as the jury may find that they have suffered, or will suffer as the direct consequence of the death of the said Schroeder.

6. That if the jury shall find for the plaintiff, then, in awarding the damages to which the plaintiffs are entitled, they must apportion the same among the equitable plaintiffs in such shares respectively as they shall find and direct.

The defendant offered seven prayers, the following only, however, it is deemed necessary to insert:

1. The plaintiff is not entitled to recover in this action, and the verdict of the jury must be for the defendant, because on the conceded facts of the case, the negligence of the deceased, Richard Ford Schroeder, directly contributed to the accident that caused his death.

2. That part of the ground covered by defendant's tracks, westward of the intersection of Ostend street, is the private right of way of the defendant, and that no evidence has been introduced tending to prove that said Schroeder would have a right to be upon said land.

4. To entitle the plaintiff to recover in this action, the jury must find from the evidence that the death of Richard Ford Schroeder, complained of, was caused altogether and entirely by the negligence and want of care of the defendant or its employés; and even if the jury should find that the accident was caused directly by the negligence of the defendant, or its agents, the plaintiff cannot recover if the jury shall further find that the deceased, Richard Ford Schroeder, directly contributed, by his own negligence or want of ordinary care, to the accident that caused his death; and if the jury shall find that any negligent act of the said Richard Ford Schroeder did so contribute to the ac-

cident that caused his death, then their verdict must be for the defendant.

5. That it was the duty of the deceased in going upon the defendant's track to look and listen for trains, without regard to the question whether the whistle was blown or the bell was rung; and if the jury shall find that if the said Schroeder could by looking and listening, when he went on the track, have seen the train which afterwards struck him, in time to have avoided it, the plaintiff is not entitled to recover, even though the jury should find that the bell was not rung, that the whistle was not blown, or that the train was going faster than the city ordinance provided.

The Court refused the first prayer of the defendant, and granted its second, it being conceded by the plaintiff. The Court granted the defendant's fourth and fifth prayers in connection with the second prayer of the plaintiff. The defendant excepted, and the verdict and judgment being for the plaintiff this appeal was taken.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, ROBINSON, and IRVING, J.

*W. Irvine Cross*, and *John K. Cowen*, for the appellant.

*John C. Rose*, and *Wm. L. Marbury*, for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The decision of this case, to a considerable extent, depends upon principles that were involved in the case of *State, use of Ricketts, vs. Balto. & Ohio R. Co.*, (*ante* p. 494). In that case it was held, that, the place where the accident occurred not being a crossing, but being the exclusive right of way of the railroad company, and the party killed being wrongfully upon the track,

there was no duty incumbent upon the employés of the company to keep a look-out for the protection of trespassers upon the road; and therefore there could be no recovery, even though there was negligence in the running of the train, unless it was distinctly shown that the presence of the deceased upon the track became known to the employés on the train, in time, by the use of reasonable care and effort, to avoid the collision. In other words, that the negligence of the deceased, in wrongfully walking upon the track, and failing to use his senses to discover the approach of the train, so far contributed directly to the production of the injury as to preclude the right of recovery. In support of this proposition a number of decisions of Courts of high authority are cited in that case.

In this case, the accident occurred on the 10th of October, 1887, within the limits of the City of Baltimore. It was in open day-light, the hour being a little after 5 o'clock p. m. The place where the accident happened was not upon an open public street, nor at any public or usual crossing of the railroad track; but it occurred while the deceased was walking on the track, facing an approaching train, and where the railroad company had the exclusive right of way for the operation of its trains. The place where the accident occurred was not far from the south-western limits of the city, and where the city has not been built up. The train that collided with the deceased, was leaving the city, bound for Washington, and the deceased was going into the city; thus confronting the approach of the train. All the track of the defendant's road west of the bridge at the intersection of Ostend street, as designated on the plat, is the private right of way of the defendant, and it is stated by the witnesses that it was about sixty or seventy feet west of the bridge that the accident happened. It appears that there was a

small footpath, much used by people in that neighborhood, along the north side of the tracks, and between the road bed of the defendant and the tracks of another railroad company; but it is not a way in which the public had any rights, and it was only used by the implied license of the railroad company.

There is really no material conflict among the witnesses as to the facts relating to the accident. Some of them, owing to their position, saw more of the occurrence than others, and there is some slight variation in the narrative given by them; but there is no real conflict as to the material facts of the case. It is shown that the deceased was seen just before the accident walking in the foot-path between the tracks of the defendant and those of the Annapolis Short Line Company, and at that time the train for Washington was approaching at quite a fast rate of speed. From the time the train got within about a thousand feet of the place where the accident occurred, it continued in full view, in its approach, to any one at or about the point of collision; and when this train was within a short distance, perhaps less than a hundred and fifty feet of the deceased, he stepped upon and crossed the north track of the defendant's road, diagonally, to the south side thereof, and pursued his way on the ends of the cross-ties until he was struck and killed by the engine. All other persons at or about the scene of the accident heard and saw the approach of the train, and paid heed to it; the deceased being the only person who seemed not to be mindful of his danger, though immediately facing the rapidly approaching train. A more daring experiment, or grosser act of negligence, on the part of the deceased, could scarcely be imagined.

It is true, the train was running at a much higher rate of speed than that allowed by the ordinance of the city, and in this, it is conceded, there was negligence

on the part of the defendant. But this disregard of the ordinance, and consequent act of negligence, on the part of the defendant, did not excuse or in any way justify the glaring act of negligence on the part of the deceased. That has been ruled in many cases, and is now the settled law. *Railroad Co. vs. Houston*, 95 *U. S.*, 702; *Balto. & Ohio R. R. Co. vs. Mali*, 66 *Md.*, 53, 60. The present is not unlike in principle the case put by Lord Chancellor CAIRNS, in the course of his opinion in the case of *Railroad Co. vs. Slattery*, 3 *App. Cas. Ho. Lords*, 1166, referred to in *Bacon's Case*, 58 *Md.*, 485, that if a train, which ought to give signal by whistle when approaching a road crossing, or passing a station, were to pass without giving such signal, and a party were, in broad daylight, and without anything either in the structure of the line or otherwise, to obstruct his view, to cross in front of the advancing train and to be killed, the Judge ought to instruct the jury that it was the folly and recklessness of the party himself, and not the carelessness of the company, which caused his death. In such case, says the Chancellor, "the jury should not be allowed to connect the carelessness in not whistling, with the accident to the man, who rushed, with his eyes open, on his own destruction." So here, the train advanced in open view, but yet the deceased persisted in his course on the track, until he confronted the engine by actual collision.

The case seems to have been tried upon the assumption, and so the argument for the plaintiff seemed to assume here, that it was the duty of the railroad company to keep a look-out for trespassers on its private right of way, and upon discovering the party upon the track who failed to leave it within a reasonable distance before he was reached, the train should have been brought to a stop. Doubtless there are many cases that could be suggested, where it would be the duty of

those in control of the train to stop it, if possible, in time to save a party found upon the track. But it is quite erroneous to assume that, in a case like the present, it was the duty of the train-men, upon seeing the party upon the track, to stop the train. From the time the deceased was discovered in his perilous situation, it was certainly the duty of those in charge of the train, by the use of reasonable effort, to avoid, if possible, a collision with him. This, in most cases, is done by the use of signals,—such as sounding the whistle or ringing the bell. But where a party is discovered on the track, in the exercise of full power of locomotion, and no impediment to his escape, those on the train may well act upon the assumption that he will use his senses for his protection, and get out of the way of danger before he is struck. If all railroad companies were bound to stop their trains upon discovering trespassers walking ahead upon their tracks, because such intruders might, by possibility, fail to get off the track in time to avoid being struck, it is difficult to say what would become of the many fast express trains that are moving over the country. Time-tables made to regulate the exact movement of trains would be subordinate to the convenience of pedestrians who might think proper to use the railroad tracks rather than other more lawful ways. But no such proposition has ever been maintained, by any well considered case of which we are aware.

The second prayer of the defendant, the correctness of which was conceded by the plaintiff, and was granted by the Court, asserts that the track where the accident occurred was the exclusive private right of way of the defendant, and that there was *no evidence* to show that the deceased had any right to be on such track. The fourth and fifth prayers of the defendant were also granted, in connection with the plaintiff's second prayer; and

with the principles announced in those three instructions, which are plainly correct, we are of opinion that there was no sufficient ground for referring the case to the jury, for any conclusion in regard to the evidence. As we have said, there was no substantial conflict in the evidence, as to material facts; and assuming the truth of all the evidence on the part of the plaintiff, there was no ground whatever shown for recovery. All verdicts of juries must have rational support from the evidence in the cause; and where it is manifest to the Court upon the plaintiff's own showing, and the uncontradicted evidence in the cause, that there is no rational ground upon which a verdict can be based for the plaintiff, it becomes the duty of the Court to direct a verdict for the defendant. And therefore, upon the evidence in this case, we think the Court below ought to have granted the defendant's first prayer, which asked that the jury be directed to render a verdict for the defendant. Upon the instructions given, we may say here as was said by the Supreme Court, in *Railroad Co. vs. Houston,* 95 *U. S.,* 702, where the testimony as to the contributory negligence was less gross and flagrant than in this case, that "not even a plausible pretext for the verdict can be suggested, unless the Court wander from the evidence into the regions of conjecture and speculation. Under these circumstances, the Court would not have erred had it instructed the jury, as requested, to render a verdict for the defendant."

Seeing that there is an entire absence of any ground for the plaintiff's recovery, we shall reverse the judgment without directing a new trial.

*Judgment reversed, but*
*without the award of new trial.*