## CHARLES WARREN v. LUTHER MENDENHALL.

June 26, 1899.

Nos. 11,658—(176).

### Personal Injury—Fire Department—Taking Risks.

*Held*, the duties of a member of the city fire department, when driving fire apparatus on a call to a fire, may require him to take risks which it would be negligence for a private person to take in pursuit of his private business.

### Same—Collision with Street Car—Negligence.

In an action by such a member against a street-railway company for damages for an injury to him resulting from a collision, at a street crossing, between a street car and a hook and ladder truck driven by him, *held*, that the question of defendant's negligence and of his contributory negligence were both for the jury.

Action in the district court for St. Louis county against defendant, as receiver of the Duluth Street Railway Company, to recover $5,200 damages for personal injuries. The case was tried before Moer, J., who directed a verdict in favor of defendant; and from an order denying a motion for a new trial, plaintiff appealed. Reversed.

*John Jenswold, Jr.,* for appellant.

Defendant was bound to use the same care in preventing a collision as the driver of any other vehicle would be bound to use. Shea v. St. Paul City Ry. Co., 50 Minn. 395. The car had no priority at the street crossing. Watson v. Minneapolis St. Ry. Co., 53 Minn. 551. Defendant's violation of the ordinance, being the proximate cause of the injury, was negligence for which he was liable. Bott v. Pratt, 33 Minn. 323; Rosse v. St. Paul & D. Ry. Co., 68 Minn. 216; Osborne v. McMasters, 40 Minn. 103. Where the motorman cannot see more than a short distance ahead, it is his duty to have the car under such control as to be able to stop as soon as he shall see an approaching fire truck. Cooke v. Baltimore, 80 Md. 551; La Pontney v. Shedden, 116 Mich. 514. The motorman failed to exercise active vigilance. Anderson v. Minneapolis St. Ry. Co., 42

Minn. 490; Strutzel v. St. Paul City Ry. Co., 47 Minn. 543; Weiss-ner v. St. Paul City Ry. Co., 47 Minn. 468. The fact that he had reason to expect the approach of the fire department was a cogent reason for his looking up the avenue. Anderson v. Minneapolis St. Ry. Co., supra; Strutzel v. St. Paul City Ry. Co., supra.

There was no contributory negligence. Flannagan v. St. Paul City Ry. Co., 68 Minn. 300; Kolsti v. Minneapolis & St. L. Ry. Co., 32 Minn. 133. The standard of reasonable care for one crossing a street-car track is different from that for one crossing a steam railroad. Johnson v. St. Paul City Ry. Co., 67 Minn. 260. Even failure to look is not as matter of law negligence. Shea v. St. Paul City Ry. Co., supra; Holmgren v. Twin City R. T. Co., 61 Minn. 85. Firemen on the way to a fire are not bound by the ordinary stand-ard. Booth, St. Ry. § 318; Magee v. West End, 151 Mass. 240; Elyton v. Mingea, 89 Ala. 521; Pennsylvania v. Langendorf, 48 Oh. St. 316; Cottrill v. Chicago, 47 Wis. 634; Wilson v. Great Southern, 41 La. An. 1041; Coots v. City, 75 Mich. 628; Garrity v. Detroit, 112 Mich. 369. Any one has a right to assume that cars will approach crossings with caution. Fonda v. St. Paul City Ry. Co., 71 Minn. 438; Watson v. Minneapolis St. Ry. Co., supra; Little v. Street, 78 Mich. 205; Holmgren v. Twin City R. T. Co., supra. Proof of a general custom is competent on the question of plaintiff's negli-gence. Lawson v. Truesdale, 60 Minn. 410; Flanders v. Chicago, St. P., M. & O. Ry. Co., 51 Minn. 193; Steffenson v. Chicago, M. & St. P. Ry. Co., 51 Minn. 531; Armstrong v. Chicago, M. & St. P. Ry. Co., 45 Minn. 85; O'Malley v. St. Paul, M. & M. Ry. Co., 43 Minn. 289; Larson v. St. Paul, M. & M. Ry. Co., 43 Minn. 423; Doyle v. St. Paul, M. & M. Ry. Co., 42 Minn. 79; Kolsti v. Minneapolis & St. L. Ry. Co., supra. Persons in great peril are not required to exercise the same care as persons under ordinary circumstances. Pennsyl-vania v. Snyder, 55 Oh. St. 342; Haney v. Pittsburgh, 38 W. Va. 570; Bischoff v. Peoples, 121 Mo. 216; Lincoln v. Nichols, 37 Neb. 332; Fehnrich v. Michigan, 87 Mich. 606; Union Pac. Ry. Co. v. McDon-ald, 152 U. S. 262. Plaintiff's contributory negligence was for the jury. Bennett v. Syndicate Ins. Co., 39 Minn. 254; Emery v. Min-neapolis Ind. Ex., 56 Minn. 460; Leonard v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 63 Minn. 489; Corbin v. Winona & St. P. R. Co.,

64 Minn. 185. Plaintiff had a right to assume that the motorman would obey the ordinance. Leonard v. Minneapolis, St. P. & S. Ste. M. Ry. Co., supra; Klotz v. Winona & St. P. R. Co., 68 Minn. 341. He had a right to assume that the motorman would follow the general custom. Westaway v. Chicago, St. P., M. & O. Ry. Co., 56 Minn. 28; Sobieski v. St. Paul & D. R. Co., 41 Minn. 169. See Thomas, Neg. 394; Little v. Hackett, 116 U. S. 366; Houston v. Richart (Tex. Civ. App.) 27 S. W. 918; Howe v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 62 Minn. 71; Finley v. Chicago, M. & St. P. Ry. Co., 71 Minn. 471.

*Thomas S. Wood*, for respondent.

The rights of persons who meet at the intersection of streets are fixed by Shea v. St. Paul City Ry. Co., 50 Minn. 395, 399. See also Watson v. Minneapolis St. Ry. Co., 53 Minn. 551, 557; Anderson v. Minneapolis St. Ry. Co., 42 Minn. 490, 492. No negligence can be attributed to the motorman for not looking up the avenue. Booth, St. Ry. § 306; Kennedy v. St. Louis, 43 Mo. App. 1, 4; Thomas v. Citizens, 132 Pa. St. 504. He can be charged only with ordinary vigilance. Hearn v. St. Charles, 34 La. An. 160; Gallaher v. Crescent, 37 La. An. 288, 291; Bulger v. Albany, 42 N. Y. 459; Boland v. Missouri, 36 Mo. 484, 492; Hestonville v. Connell, 88 Pa. St. 520; Philadelphia v. Henrice, 92 Pa. St. 431; Booth, St. Ry. § 306; Lawrence v. Pendleton, 1 Cin. Sup. Ct. 180.

Plaintiff was guilty of contributory negligence. Had a passenger in the car been killed, plaintiff would have been held negligent. What would be negligence in that case is contributory negligence in this. McGee v. Consolidated, 102 Mich. 107; Fritz v. Detroit, 105 Mich. 50; People v. Little, 86 Mich. 125; Carson v. Federal, 147 Pa. St. 219. See State v. Sheppard, 64 Minn. 287; Watson v. Minneapolis St. Ry. Co., supra. The same precautions should be taken when crossing an electric street railway as a steam railroad. Carson v. Federal, supra; Ehrisman v. East, 150 Pa. St. 180. That plaintiff was a member of the fire department on the way to a fire does not absolve him from contributory negligence. Greenwood v. Philadelphia, 124 Pa. St. 572. See Wood, Ry. 1518.

CANTY, J.[1]

Plaintiff was employed by the fire department of the city of Duluth as the driver of a hook and ladder truck. While responding to a fire alarm on September 7, 1898, the truck, which plaintiff was driving on one street, came in collision with defendant's electric street car, running on its track on a cross street, whereby plaintiff was injured. He brought this action to recover damages for the injury, on the ground that the same occurred by reason of defendant's negligence. At the close of the evidence, the court ordered a verdict for defendant, and from an order denying a new trial the plaintiff appeals.

The street car was running on the south track on Superior street, which extends east and west. The fire truck was running on Lake avenue, which extends north from the north line of Superior street, and from that line extends across Superior street in a south-southwest direction, and continues in that direction, so that on the north side of Superior street the two streets intersect at right angles, but on the south side they intersect at oblique angles. · The street car was approaching this crossing from the west, and the truck was approaching it from the north. There was a three-story brick block on the northwest corner, which cut off plaintiff's and the motorman's view of each other as they each approached the crossing; and by reason of this, and the change in the direction of Lake avenue at the north line of Superior street, the motorman approached within about 35 feet of the point of collision before he could have seen the approaching truck coming down Lake avenue, if he had looked in that direction. Lake avenue is 66 feet wide, and Superior street is 80 feet wide. For about a block north of Superior street, the grade of Lake avenue is 11 or 12 feet to the 100, sloping down towards Superior street. The hook and ladder truck was 47 feet long, from the end of the pole or tongue to the end of the longest ladder, and weighed, with its equipment, about 6,500 pounds. There were, besides, five men on the truck, which, with its load, was drawn by two horses down this steep grade. The horses and the front end of the truck passed in front of the moving car,

[1] MITCHELL, J., absent.

and then the car struck the rear wheel of the truck, threw the rear end of the truck around, resulting in injury to plaintiff, and in the death of two other firemen, who were riding on the truck.

All of the witnesses agree that the car was moving slowly,—some say, no faster than a slow walk; others say, no faster than four miles per hour. There is a switch in the street-car tracks in Superior street, 58 feet west of the west line of Lake avenue north. The east-bound cars always run slowly over this switch, and there is testimony tending to prove that the car in question stopped at this switch. There is a conflict of testimony as to how fast the fire truck came down Lake avenue. Some of plaintiff's witnesses testify that the horses were on a slow trot, and others testify that the rate of speed was about seven or eight miles an hour; while some of plaintiff's witnesses testify that the truck came down pretty fast,—at a pretty lively gait,—and others testified that it came down at a furious gait. There is testimony tending to prove that the car could have been stopped almost instantly. There was a brake on the front wheels of the truck, to be worked by the driver's foot; and there is testimony tending to prove that plaintiff had set the brakes as hard as he could, and that the horses were holding back in the breeching as much as they could, but that this combined force was not sufficient to hold back the heavy truck, which pushed them along out of a trot into a gallop. Plaintiff himself so testified. The testimony also tends to prove that there was a gong, 16 or 18 inches in diameter, on the truck, and that it was sounded continuously as the truck came down Lake avenue; that the gong could be heard from one to four blocks; and that the gongs on two other fire trucks or carts, following immediately behind the one plaintiff was driving, were being also continuously sounded. Plaintiff and the men on his truck saw the car when he was about 140 feet away from the point of collision.

As to what plaintiff did at this time he testified as follows:

"Q. What did you do when you noticed that car? A. Why, I held my horses in check as far as I could, and when I see that the car was not likely to stop, it was too late for me to come to a standstill, and the car was in such a position that there was no chance of my turning either east or west, and my only opening was to

cut in front of it, and get past it, and get into Lake avenue south. There was an opening there, and it was the only opening that we had. Q. Then what did you do? A. In about 15 or 20 feet of the sidewalk on Superior street, I gave my horses more rein. Q. What effect did that have upon it? A. It probably increased our speed two miles an hour. Q. You tried to shoot by the car that way? A. Yes, sir. Q. Before that, and after you saw the car, did you see any people down on the street there? A. Yes, sir. Q. Did you notice what they were doing? A. They were holding up their hands, motioning the car to stop. Q. Did you notice the rate of speed the car was going there? A. Yes, sir; it was running very slowly. I would judge a walk,—a common man's walk. Q. What did you expect, as to whether it would stop or not? A. I expected it to stop every instant from the time I saw it as they usually— That is, my experience has— Q. What have you noticed about the custom of street cars, that way, to stop, and give the fire department the right of way at crossings? A. I have always noticed their stopping on the approach of any fire apparatus. * * * Q. When you saw the car first, did you notice the motorman? A. Yes, sir. Q. Which way was he looking when you first saw him? A. Looking south. Q. Did you see him look any other way than that? A. I did not. Q. He was looking south all the time that you were coming down Lake avenue? A. Seemed to be; yes, sir. Q. Until you passed in front of the car? A. Yes, sir; from what I could see. Q. You could see him? A. Well, at the time I passed in front of the car, I might not have seen him. Q. Well, up until it passed in front of the car? A. Yes. Q. He never looked in your direction once, did he? A. Not that I noticed. Q. Weren't you noticing him? A. Yes. Q. You never saw him turn his head towards you? A. I did not. Q. How far is the Tremont House from Superior street? Do you know? A. It is about—about 180 or 190 feet to the upper side to the alley; 80 or 90 feet, and the Tremont House is below a little; to the lower side of the Tremont House may be 150 feet, from the center of Superior street. Q. At any time after you saw the car, did you attempt to stop the truck? A. No, sir; I can't say as I did. Q. You thought the car would stop, and you would get by, didn't you? A. I did. Q. You thought that this person in the street would succeed in stopping the car, and let you by? A. I did; yes, sir. Q. You thought you would take the chance, and go in front of it? A. Yes, sir."

Several witnesses testified that a number of the bystanders, who saw the car and truck coming towards the point of collision, yelled, shouted, and motioned to the motorman to stop. One Little testified as follows:

"What next did you observe and do? A. Well, I run across the

street, and I says, 'I am going to try and stop that car, or there may be a collision.' I went across the street, and I got practically in front of the car, and throwed up my hands to stop the car, and I pointed up the hill, and hollered to them to stop, the fire department was coming. I stayed there until the car came within four or five feet of me, and I got off the track, and I seen he wasn't going to stop; so I stepped to one side."

These witnesses further testified that the motorman paid no attention to these efforts to warn him. The motorman testified that he did not hear the shouts or see the motions; that he did not see the fire truck until the horses were almost on the track in front of his car; that then he stopped it almost instantly; that, just before he saw the horses, he had been looking south down Lake avenue.

We are of the opinion that, under these circumstances, the question of the motorman's negligence was for the jury. We are also of the opinion that the question of whether or not plaintiff was guilty of contributory negligence was for the jury, although we regard this as rather a close question. The fact that plaintiff was driving, down a steep grade, a very heavy truck, which he was not able to control completely, has, in our opinion, no tendency to show that he was not guilty of contributory negligence, but, on the contrary, has a tendency to show that he was guilty of such negligence. As between him and defendant, it is immaterial whether he owned the truck himself, or was driving it as the servant of the city. If he was driving a vehicle which was so unwieldy and unmanageable that it was dangerous to drive it on the public streets, and this was the cause of the collision, he cannot blame the defendant; but whether or not this was the cause of the collision is a question for the jury.

In our opinion, the jury were warranted in finding that, even if plaintiff's truck was not unmanageable and dangerous, he would have been justified in driving as fast as he did, and in attempting (until too late to avoid the collision) to pass in front of the car as he did. It is often the duty of a fireman, when attending a fire or responding to a fire alarm, to act, regardless of a considerable degree of danger to himself. To hesitate or stop at every slight indication of danger might often be a dastardly failure of duty on his

part.  His duties are of a public character, and in cities of a considerable size these duties are exceedingly important.  On many occasions, his instant and fearless action is imperatively necessary to prevent widespread disaster, the loss of property, or the loss of life, or both; and, when he is called, he seldom knows the urgency of the occasion until he arrives upon the ground.  Plaintiff had the right of way.  An ordinance of Duluth, in force at the time, reads as follows:

"All apparatus belonging to the fire department of the city of Duluth, when attending a fire or an alarm of fire, shall have the right of way on any and all streets, avenues, alleys, or public grounds; and all persons driving vehicles of any kind, except cars upon tracks, shall turn entirely off the center of the street, and stop until such apparatus shall pass; and it shall be the duty of any conductor, driver, or person in charge of any car upon any track, upon the approach of any such apparatus when proceeding to a fire, to immediately stop such car until such apparatus shall pass."

But, speaking for myself alone, I will say that I am of the opinion that such right of way would be implied, without the aid of any such ordinance.  See State v. Sheppard, 64 Minn. 287, 67 N. W. 62.

Of course, such a fireman must use ordinary care.  Ordinary care is care commensurate with the occasion; and, when the dangers are great, it may be a very high degree of care.  When a fireman's duty requires him to take great risks, the rule of ordinary care may require him to be exceedingly alert and watchful to prevent injury to himself and others, but still that rule may not prohibit him from venturing into the danger.  If a private citizen, pursuing his private business, had attempted to pass in front of this street car as plaintiff did, we are clearly of the opinion that it should be held, as a question of law, that he was guilty of contributory negligence, and could not recover.  But the fire department is a well-known public institution.  As its vehicles rush along the street, and the gongs are sounded fast and furiously, it is customary for every one else to be alert to give these vehicles the right of way, and this custom grows out of imperative necessity.  See Magee v. West End, 151 Mass. 240, 23 N. E. 1102; Wilson v. Great Southern, 41 La. An. 1041, 6 South. 781.  See also as bearing on the questions

here discussed, Cottrill v. Chicago, 47 Wis. 634, 3 N. W. 376; Pennsylvania v. Langendorf, 48 Oh. St. 316, 28 N. E. 172. As before stated, ordinary care may require the drivers of these vehicles, on such occasions, to be also very alert to avoid injury to themselves and others. Whether, under these rules, plaintiff was guilty of contributory negligence, is a question for the jury.

Order reversed and a new trial granted.