STATE OF MARYLAND

*vs.*

JOHN C. BROWN.

*Municipal Ordinance—Regulation of Street Traffic.*

An ordinance of the Mayor and City Council of Baltimore, granting an absolute right of way on the city streets to fire apparatus, ambulances, police vehicles, and the vehicles of certain registered physicians, being a proper exercise of the police power, is not invalid as being repugnant to Acts of 1920, ch. 506, sec. 163, applicable to the entire State, requiring motor vehicles to yield the right of way to other vehicles approaching on intersecting roads from the right.

*Decided November 23rd, 1922.*

Appeal from the Criminal Court of Baltimore City (AMBLER, J.).

Criminal proceeding against John Brown for violation of a city ordinance. From a judgment in favor of defendant, the State appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE, and ADKINS, JJ.

*Alexander Armstrong, Attorney General,* with whom were *Lindsay C. Spencer, Assistant Attorney General,* and *Robert F. Leach, State's Attorney for the City of Baltimore,* on the brief, for the State.

*John Phelps,* submitting on brief, for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The above entitled case arises out of a supposed repugnance between an ordinance of the Mayor and City Council of Baltimore, and an act of the Legislature of Maryland of 1920, chapter 506, section 163, part 4, defining the right of way of vehicles, and especially motor vehicles, over the streets of Baltimore City.

By the act of the Legislature, which was applicable not only to the City of Baltimore, but to the entire State, including the City of Baltimore, a motor vehicle was required to yield the right of way to other vehicles on a street or road approaching from the right. By the ordinance of the Mayor and City Council there were exempted from the application of this rule fire apparatus, ambulances, police vehicles, and the vehicles of physicians who had registered with and been granted special privileges by the police force of that city.

The traverser in this case was indicted for a violation of this ordinance, and to the indictment he filed a demurrer, which, coming on to be heard before the judge assigned to the Criminal Court of Baltimore City, was sustained, and from that ruling the present appeal has been taken by the State.

There is no question of fact presented in the record upon which there is any controversy whatever. The sole question is as to the validity of this ordinance, and particularly the power of the Mayor and City Council of Baltimore to adopt an ordinance such as that under which it was sought to bring the traverser to trial, as being in derogation of the Act of Assembly. The question thus presented is not a new one in this State. It was first presented in the case of *Rossberg* v. *State,* 111 Md. 394, in which JUDGE PEARCE, speaking for this Court, filed a very full and elaborate opinion with regard to a somewhat similar contradiction between the State law and an ordinance of the Mayor and City Council of Baltimore, designed as far as possible to put an end to the cocaine traffic, and in that case, after an extensive review of the

authorities, both in this State and elsewhere, the conclusion was reached that the ordinance in question came under the police power as delegated by the Legislature to the municipal corporation, and the validity of the ordinance was upheld. That decision has been cited, followed and adopted in quite a number of cases since it was decided. *Schultz* v. *State,* 112 Md. 211; *Baltimore* v. *Hampton Court,* 126 Md. 348; *Brown* v. *Stubbs,* 128 Md. 133; *Benesch* v. *State,* 129 Md. 515 (which was a liquor case) ; *Gomeringer* v. *McAbee,* 129 Md. 559; *Lee* v. *Leitch,* 131 Md. 42.

The last cited case, like the present, involved a question of the rights of a traverser charged with the violation of an ordinance designed to regulate the streets in the City of Baltimore, and in the course of a very full and elaborate opinion by JUDGE BURKE, he used the following language: "This legislative authority over the streets is sometimes classified as belonging to the police power; that is to say, that great power which embraces the protection of life, limb, health and property, and the promotion of the public peace and safety. It is a high conservative power of the utmost importance to the existence of good government. *Lake Roland Elevated R. R. Co.* v. *Baltimore,* 77 Md. 352. The power to maintain and regulate the use of the streets is a trust for the benefit of the general public. This power in express terms is conferred by the charter upon the city." *Levering* v. *Park Commissioners,* 134 Md. 48; *Osborne* v. *Grauel,* 136 Md. 88. Many other cases might be cited from other jurisdictions in which the same result was reached by the court, but the major part of them will be found collected in the opinions to which reference has just been made.

It might be added here, with renewed emphasis, as was said by JUDGE BURKE, that this power of regulation of the use of the streets of a large city, like Baltimore, is peculiarly embraced within the police power, since it embraces the protection of life, limb, health and property, and is intended to be conducive to the existence of good government.

Whenever the validity of an ordinance is called in question, of the description of the one involved in this case, there is one element which courts are uniformly in the habit of considering, namely, the reasonableness or unreasonableness of the provisions of the ordinance. If this test is applied in the present case, what is the result? That it was not the purpose of the municipality to derogate in any respect from the general rule laid down by the Legislature, but only to grant certain priorities when human life might be at stake, the good order of the city imperiled by incipient riot, or serious loss occasioned by a conflagration. The mere enumeration of these shows them to fall distinctly within the police power and general welfare grant of power made to Baltimore City by its present charter.

In view of the uniform attitude of this Court, as evidenced by the decisions previously cited, the judgment of the Criminal Court of Baltimore must be reversed, and the case remanded for trial.

> *Judgment reversed and cause remanded, costs to be paid by the appellee.*