## THE BALTIMORE TRANSIT CO. *v.* ESTHER C. YOUNG

[No. 40, October Term, 1947.]

*Decided December 17, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Philip S. Ball,* with whom was *James J. Lindsay* on the brief, for the appellant.

*Webster C. Tall* and *J. Marshall Neel,* with whom was *Tall & Della* on the brief, for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was instituted by Miss Esther C. Young, of near Relay, to recover for personal injuries and property damage which she sustained when her Buick automobile was struck by a trouble truck owned by the Baltimore Transit Company. The jury in the Baltimore City Court rendered a verdict in her favor for the sum of $950, and the transit company appealed from the judgment entered upon the verdict.

The accident occurred about 9 o'clock on the night of Sunday, June 30, 1946, at the intersection of Howard and Lexington Streets. Plaintiff's automobile was being driven by Sullivan Pitts, aged 69, who lived in the same house with plaintiff about ten miles from Baltimore. After supper at a hotel in Baltimore, Pitts drove to the post office and then, with plaintiff beside him, started for home by way of Lexington Street. When they reached Howard Street the traffic light was green, and they proceeded across the street intersection entirely oblivious of the northbound trouble truck. The driver of the truck, Philip Geoghegan, applied the brakes and swerved to the left, but was unable to avoid the collision. The truck crashed into the automobile near the middle of the street intersection, and spun it around upon the northwest

sidewalk so that the rear wheels were but a few feet from the store window of Hochschild, Kohn & Company, and the front wheels were in the gutter. Pitts was thrown out of the automobile and knocked unconscious. Plaintiff sustained cuts on her head and blood clots on her body.

Defendant is a public service corporation operating an electric railway system in Baltimore. To minimize the hazards likely to result from accidents, the transit company keeps the trouble truck for emergency calls to make repairs and keep the car lines operating. Such emergency vehicles have been considered of such vital importance for the safety of the public that the Legislature of Maryland, in the Motor Vehicle Act of 1943, ch. 1007, which revised the motor vehicle laws of the State, classed them, when designated by the Commissioner or the Chief of Police of an incorporated city, as "authorized emergency vehicles" along with vehicles of the fire department, police cars, ambulances and other emergency vehicles, which are exempted from speed restrictions and other traffic regulations and have the right of way over all other vehicles under certain circumstances. Code Supp. 1943, art 66½ sec. 2 (a) (1). The grant of such special privileges to an emergency vehicle is a proper exercise of the police power of the State. When human life may be at stake, or where there is immediate danger of serious loss of property, prompt performance of the duties imposed upon drivers of emergency vehicles is imperative. *State v. Brown,* 142 Md. 27, 119 A. 684. The Maryland Motor Vehicle Act accordingly provides: "The *prima facie* speed limitations and provision relative to right-of-way stopping at through highways, rules of the road, traffic control devices and signals set forth in this Article shall not apply to authorized emergency vehicles when responding to emergency calls and the drivers thereof sound audible signal by bell, siren, or exhaust whistle." Code Supp. 1943, art. 66½, sec. 159. The Act further provides: "Upon the immediate approach of an authorized emergency vehicle, when the

driver is giving audible signal by siren, exhaust whistle, or bell, the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the highway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer." Code Supp. 1943, art. 66½, sec. 180 (a).

Section 159 declares that the provision exempting authorized emergency vehicles from speed restrictions and other traffic regulations shall not relieve the driver of such a vehicle from the duty "to drive with due regard for the safety of all persons using the street," and shall not protect him from the consequence of "a reckless disregard of the safety of others." Section 133 (b) directs that the driver of any authorized emergency vehicle responding to an emergency call, upon approaching a red or stop signal or any stop sign, "shall slow down as necessary for safety," but "may proceed cautiously past such red or stop signal or stop sign." Thus, although the driver of an emergency vehicle is ordinarily not limited in speed, and is authorized to drive with caution past a red light, he may nevertheless be held liable for damages if, in the exercise of his special privileges, he fails to give audible warning of his approach and pays no attention whatever to traffic on an intersecting street. Evidence that the driver of such a vehicle drove at high speed past a red light at a busy street intersection, without giving due warning to traffic on the intersecting street, warrants a finding that the vehicle was being operated with "a reckless disregard for the safety of others." *Mansfield v. City of Philadelphia,* 352 Pa. 199, 42 A. 2d 549, 550. On the other hand, the driver of such a vehicle cannot be expected to use the same care that the law requires of the ordinary motorist who has no emergency duty to perform. To stop at every slight indication of danger might often be a failure of duty on the part of the emergency driver. On many occasions his prompt and fearless action is imperatively

necessary to prevent loss of property or loss of life, or both, or even widespread disaster. *Magee v. West End Street Ry. Co.*, 151 Mass. 240, 23 N. E. 1102; *Warren v. Mendenhall*, 77 Minn. 145, 79 N. W. 661, 663.

In this case it is undisputed that the trouble truck, which is known as "Big Bill," is an authorized emergency vehicle. It is also undisputed that the truck was responding to an emergency call. Geoghegan, the driver, testified that, on receiving the call, John Ernest, the lineman on the truck, started the flashing light and began to blow the siren. He estimated that the speed of the truck on Howard Street after passing Fayette was about 20 miles an hour, but on nearing Lexington he slowed down to about 16 miles an hour. He claimed that he looked to the right, because Lexington is a one-way street for westbound traffic, but believing the way was clear, he then increased his speed to over 20 miles an hour. Suddenly plaintiff's car appeared before him about ten feet away. It was likewise testified by Ernest, the lineman, that the red light on the truck kept flashing from the time he turned it on; that he blew the siren all the way from Fayette to Lexington; and that the truck, which weighs about 16 tons, and has dual rear wheels, has seldom been driven faster than 20 miles an hour.

The testimony of the transit company's driver and lineman was corroborated largely by disinterested witnesses. George K. Mueller, who was driving immediately behind plaintiff's car, testified that, before he reached Howard Street, he saw the truck coming with the siren going full blast and the red light flashing, and he immediately stopped his car. He expressed the opinion that the speed of the truck was not more than 25 miles an hour, which he considered normal speed on Howard Street. Clarence Phillips, who was driving a trackless trolley north of Lexington Street, also saw the flashing light coming over "the hill" at Fayette Street, and as soon as he heard the siren, he drove toward the curb and stopped. Another witness, Gilbert Keene, a 15-year-old school boy, who saw the truck as he was walking

on the east side of Howard Street, testified that the siren kept blowing all the way from Fayette to Lexington.

Plaintiff relied on the testimony of Sigmund Goldberg, a taxicab driver, that the truck driver was driving in the center of Howard Street and then swung to the left to avoid other vehicles. One of the "rules of the road" is that upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except (1) when overtaking and passing another vehicle proceeding in the same direction, (2) when the right half of a roadway is closed to traffic, (3) upon a roadway divided into three marked lanes for traffic, and (4) upon a roadway designated for one-way traffic. Laws of 1943, ch. 1007, Code Supp. 1943, art 66½, sec. 162. Ordinarily evidence that the driver of a motor vehicle, who is the defendant in a suit for damages, failed to drive upon the right half of a roadway is sufficient to warrant the court in submitting the case to the jury on the question of his negligence. *Crunkilton v. Hook,* 185 Md. 1, 42 A. 2d 517. However, Goldberg's testimony, which was evasive and confusing, was not sufficient to go to the jury, as the Motor Vehicle Act provides that the rules of the road shall not apply to an authorized emergency vehicle responding to an emergency call when the driver sounds an audible signal and slows down as necessary for safety.

Plaintiff also called attention to Goldberg's testimony that the siren was not sounded the entire distance from Fayette to Lexington Street, but only about a half block starting at the alley south of the May Company's store. Goldberg's testimony shows no negligence on the part of the Baltimore Transit Company or its servants. Of course, to impose upon a traveler on a highway the duty of giving the right of way to an authorized emergency vehicle, notice to him must be given of its approach so that he has a reasonable opportunity to stop or otherwise yield the right of way. *Balthasar v. Pacific Electric Ry. Co.,* 187 Cal. 302, 202 P. 37, 19 A. L. R. 452, 458. In the instant case, however, it was shown that the siren was heard plainly by other automobile drivers in the vicinity.

Undoubtedly Pitts, by the exercise of ordinary care and caution, could easily have heard the siren in sufficient time to yield the right of way to the emergency vehicle, and thus could have avoided the collision. Moreover, as there was no rain or fog to obscure his vision, he could easily have seen the flashing light.

Pitts and plaintiff testified that they did not hear the siren and did not see the flashing light. But we accept the rule that when a witness testifies that he did not see or hear a certain object which, if he had actually looked and listened, he must necessarily have seen and heard, his testimony is not worthy of consideration, *Baltimore & Ohio R. Co. v. State, Use of Roming,* 96 Md. 67, 79, 53 A. 672; *Maryland Electric R. Co. v. Beasley,* 117 Md. 270, 279, 83 A. 157. For instance, in *Baltimore & Ohio R. Co. v. Newton,* 137 Md. 21, 111 A. 481, where plaintiff's automobile was struck by a train while he was attempting to drive across the railroad track at Point of Rocks, and he testified in his suit against the railroad company that he looked and listened near the crossing but did not see or hear anything to indicate proximity of danger until he was on the track and the train was only a few feet away, the Court held that a verdict should have been directed in favor of the defendant, because it was incredible that a brightly burning acetylene headlight could not be seen by a person who looked, or that the heavy train could approach so silently as not to be heard by any person who was in reality listening.

It appeared that Pitts had been quite deaf for several years, but that he used a hearing aid device, and on the night of the accident he had the phone in his ear with the battery on the seat of the car. It is not known whether Pitts was unaccustomed to city traffic and the warning signals of emergency vehicles, or whether his attention was diverted to something else at the busy street intersection. In any event, it is plain from his own admission that he had been irritated by the red lights which had delayed him, and finally, when he reached Howard Street, he was anxious to get across before the green light turned. He said on the stand: "When

I reached Charles Street, the light was red. There was a man directly in front of me who didn't start right away. * * * He had some young people in the car and was moving awful slow all up Lexington Street, so these children could look in the windows. * * * When we reached Liberty Street, the light was red. When we reached Park Avenue, the light was red. As I started from Park Avenue towards Howard Street, the light turned green. My front bumper was almost touching his rear bumper. When we reached Howard Street, and had that green light, he turned north, I started to cross, and I was knocked completely out." In other words, when the slowly moving car ahead of him turned into Howard Street, he kept straight ahead and drove directly in front of the emergency truck with its siren screaming and its warning light flashing.

In an action to recover damages for injuries caused by the alleged negligence of the defendant, it is incumbent upon the plaintiff to prove (1) that there was a neglect of duty by the defendant, and (2) that the injury sustained was the direct consequence of such neglect of duty. Where it is manifest to the court upon the plaintiff's own showing and the uncontradicted evidence in the case that there is no rational ground upon which a verdict can be based for the plaintiff, it becomes the duty of the court to direct a verdict for the defendant. *State, to Use of Bacon, v. Baltimore & Potomac R. Co.,* 58 Md. 482; *Baltimore & Ohio R. Co. v. State, to Use of Schroeder,* 69 Md. 551, 16 A. 212. In the case before us there is no substantial conflict in the evidence as to material facts. Plaintiff did not meet the burden of establishing some negligent act or omission of defendant. Assuming the truth of all the evidence on behalf of plaintiff, yet no ground was shown for recovery. Therefore, the judgment for plaintiff must be reversed.

> *Judgment reversed, without a new trial, with costs.*

MARBURY, C. J., and COLLINS, J., concur in the result.